525 F.Supp. 107 (1981)
UNITED STATES of America
v.
J. D., R. S., and J. S., Defendants.
No. 81 Cr. 0008 (RWS).
United States District Court, S. D. New York.
September 22, 1981.
As Amended October 13, 1981.
*108 John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States of America; Ruth Glushein, Benito Romano, Asst. U. S. Attys., New York City, of counsel.
Caesar D. Cirigliano, Federal Defender Services Unit, The Legal Aid Society, New York City, for defendant R. S.; Jack Lipson, Brooklyn, N. Y., of counsel.
Theodore Krieger, New York City, for defendant J. D.
Louis Aidala, New York City, for defendant J. S.
SWEET, District Judge.
In an opinion of September 4, 1981, I reserved decision on the government's motion to transfer defendants R. S. and J. S. to adult status pursuant to 18 U.S.C. § 5032. A hearing was held on September 11, 1981 to provide counsel with a second opportunity to present evidence and to cross-examine the government's witnesses. After consideration of all the evidence before me and of the legal arguments made, I hereby grant the government's motion to transfer R. S. and J. S. to adult status.
As mentioned in the earlier opinion in this action, the analysis of the Juvenile Delinquency statute and the conclusion reached by this court "should be informed both by an awareness of the goal of rehabilitation and the premises underlying the rehabilitative ideal and by an awareness of the congressional concern about the threat to society posed by juvenile crime." 525 F.Supp. 101 at 103 (S.D.N.Y.1981). The factors enumerated in 18 U.S.C. § 5032 are discussed in light of this principle.
With regard to defendant R. S.:
1) Age. R. S. was born on January 27, 1963. The offenses charged in the juvenile information are alleged to have occurred on January 2, 1981, only twenty-five days before R. S.' eighteenth birthday.
2) Social Background. R. S. was the second of his mother's four out of wedlock children. His mother has never married and his father, after frequent periods of incarceration, returned to Puerto Rico in 1974. His father has not supported the family and has had only minimal contact with the defendant. R. S. resides with his mother, with one brother, a step-sister, and Mr. P. who has been involved with his mother since 1976. R. S. is reported to resent Mr. P.'s presence, and communication between them is said to be negligible. R. S.' older brother has been serving in the United States Army for two years.
Defendant's mother reported that R. S. has been a management problem at home and at school since the age of six. In fifth grade R. S. pushed a teacher down the stairs. Additionally, R. S. had the habit of setting fires in the home, causing an aunt who was residing in the home to leave out of fear. At age eleven, R. S. ran away from home for two weeks, reportedly staying with friends. It may well be, as urged by defense counsel, that these incidents, are not as unusual for a child in this environment as for one who is more protected and secure; nonetheless there are some indications of hostility, a lack of family structure, and an inability to respond to supervision.
R. S. has been involved with Ms. B. for approximately two years and fathered her child, who was born on December 27, 1980. *109 Ms. B. and the baby live in Puerto Rico. According to R. S., he planned to marry her after graduation from high school, but Ms. B. has not returned to New York. R. S. supported his son from money sent to R. S. on a monthly basis by his older brother and from R. S.' own unaccounted for resources.
3) The nature of the alleged offense. The details of the attempted bank robbery with which R. S. is charged is described in this court's prior opinion (Id. at pp. 105-106). It is sufficient to note that when law enforcement agents ordered four alleged bank robbers not to move R. S., who was armed with a small-barreled revolver, fled. While fleeing, R. S. threw the weapon over his shoulder into the front yard of an adjacent house, to the street. After R. S. was apprehended, the gun that he was carrying, a loaded .38 caliber revolver, was retrieved.
4) The extent and nature of R. S.' prior delinquency record. R. S. was arrested on September 27, 1980 in the Bronx on a charge of manufacturing weapons and resisting arrest. Defense counsel has indicated that the weapons charge was dismissed on the ground that testimony to the grand jury was insufficient.
5) Present intellectual development and psychological maturity. The written report by the psychiatrist who examined R. S. establishes that although R. S.' intellectual capabilities are limited, there is no impairment of his capacity for logical and rational thought. Additionally, he is characterized in the psychological report, as a suspicious and guarded individual and in the probation report, as a street-wise young man.
R. S.' school records indicate that his poor attendance record paralleled poor scholastic standing during high school. In seventh and eighth grade his grades were adequate and his attendance record was good. On February 5, 1981, before completing the eleventh grade, R. S. was discharged from high school as overage.
6) The nature of past treatment efforts and R. S.' response to such efforts. After being discharged from high school R. S. had the opportunity of participating in an Outreach Program which is an alternative educational approach toward obtaining a GED for individuals who have dropped out of high school. According to his mother, R. S. did not participate in this program.
7) The availability of programs designed to treat the juvenile's behavioral problems. At the hearing on the transfer motion, a probation officer who had investigated the availability of programs for juveniles in the federal system testified that juveniles cannot be handled within the federal prison system, but are boarded in state facilities. She further testified that there are no such facilities in the State of New York that would be available for juveniles in the age range of the defendants in this case. However, there are such facilities in Kentucky and Connecticut.
With regard to defendant J. S.:
1) Age. J. S. was born on February 4, 1963. At the time of the alleged offense, J. S. was seventeen years and eleven months old.
2) Social Background. J. S. is the second of his mother's four out of wedlock children. J. S. was born in St. Thomas, Virgin Islands and lived there with his maternal grandmother until 1971 when both he and his grandmother moved to New York to live with J. S.' mother and older step-sister. J. S. continued to live with his mother, her three other children, and his grandmother until 1978 when his mother, after marrying Mr. A., moved to Boston with three of her children. J. S. remained in New York with his grandmother. J. S.' father has resided in New York since his discharge from military service in 1967. He presently lives in the Bronx with his wife and daughter. If given the choice, J. S. would prefer not to live with either of his parents. J. S.' grandmother expressed her love for J. S. and indicated that at times she had difficulty controlling and supervising him. Neither his parents nor his grandmother knew that J. S. had been discharged from school a month before his arrest.
3) The nature of the alleged offense. The details of the attempted bank robbery *110 with which J. S. is charged is described in this court's prior opinion (Id. at pp. 105-106). When J. S. was apprehended he was in possession of a 20-gauge shotgun, sawed off barrel, loaded with one round of ammunition.
4) The extent and nature of J. S.' prior delinquency record. A charge of attempted robbery stemming from an incident with another youth at Yankee Stadium was filed against J. S. on June 8, 1976. Prosecution was declined on that day.
5) Present intellectual development and psychological maturity. The written report by the psychiatrist who examined J. S. establishes that although J. S.' intellectual capabilities are limited, there is no significant impairment of his capacity for logical and rational thought. Additionally the report indicated that J. S. was deficient in terms of an altruistic concern for others. J. S.' school record indicates that he failed the majority of his high school courses and that he was discharged as overage on December 22, 1980.
6) The nature of past treatment efforts and J. S.' response to such efforts. No evidence has been submitted with respect to any treatment program made available to J. S. and perforce with respect to his response.
7) The availability of programs designed to treat the juvenile's behavioral problems. The availability of treatment programs has already been described.
The above are my findings on the factors enumerated in the statute. The decisions to transfer R. S. and J. S. are difficult. However, meaningful differences exist with respect to R. S., J. S., and J. D., who at this time, has not been transferred. J. D. was the only one who seriously attempted participation in a rehabilitative program  the Job Corps. Rehabilitation is a primary goal of the statute. Additionally, I have only had the opportunity to observe J. D. on the witness stand and his testimony and demeanor added further support to my determination to reserve decision on transferring J. D. J. D.'s slowness, unsophistication, limited understanding of the world, and concern for his mother contrasts with R. S.' pattern of incorrigibility at home and school, his "street-wise" demeanor, and with J. S.' lack of altruistic concern for others and his remoteness and secrecy from his family. Moreover, both R. S. and J. S. were armed with loaded weapons. A major factor in the passage of the Juvenile Delinquency statute was the threat to society posed by juvenile crime. In being armed, R. S. and J. S. constituted a more significant threat to society than J. D. who was not armed.
In light of these findings, the government's motion to transfer R. S. and J. S. is granted. A pretrial conference will be held on Tuesday, September 22, 1981 at 4:00 p. m.
This opinion is to be sealed.
IT IS SO ORDERED.

APPENDIX
On consent of all attorneys, this opinion is being submitted for publication with the defendants' names withheld.