**UNITED STATES of America**

v.

**John DOE, Defendant.**

**No. 88 Cr. 0208 (SWK).**

United States District Court,
S.D. New York.

April 14, 1989.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City by James R. Bucknam and Kerry A. Lawrence, Asst. U.S. Attys., for the Government.

Caesar D. Cirigliano, The Legal Aid Society, New York City by Roland Thau, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Defendant was a juvenile at the time he allegedly sold cocaine, and for this reason he was arrested pursuant to a juvenile information as required by 18 U.S.C. § 5032. The government has moved pursuant to this same section to "transfer" defendant to adult status. The Court ordered that a psychiatric examination be conducted of defendant, and the Court has received and considered the doctor's report. In addition, the Court has considered the affidavits and letter memoranda of the parties.

■ As a prerequisite to federal jurisdiction, the Attorney General of the United States must certify,

after investigation, . . . that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in section 841, 952(a), 955, or 959 of title 21, and that there is a substantial federal interest in the case or the offense to warrant the exercise of federal jurisdiction.

18 U.S.C. § 5032. In the absence of such certification, "such juvenile shall be surrendered to the appropriate legal authorities of such state." *Id.* The United States Attorney for the Southern District of New York, pursuant to authority delegated to him by the Attorney General, certified that the charged offenses are described in 21 U.S.C. § 845a,[1] and that there is a substantial federal interest in the case such that federal jurisdiction is warranted. Exhibit B to Affidavit of James R. Bucknam, dated June 3, 1988. In addition, Lawrence Lippe, Chief of the General Litigation and Legal Advice Section of the Justice Department's Criminal Division, wrote to Mr. Guiliani and authorized this motion to transfer defendant to adult status. The Court has no authority to review the Attorney General's certification. *United States v. Vancier,* 515 F.2d 1378, 1381 (2d Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82

---

**1.** Although the statute refers to section 841, it is merely the definitional section for the crimes described in section 845a.

(1975). The Court therefore has jurisdiction over the juvenile.[2]

The statute in section 5032 identifies six factors to be considered by the Court in deciding whether to treat a juvenile offender, that is, someone who commits a crime before his eighteenth birthday, 18 U.S.C. § 5031, as an adult. These factors are: (1) defendant's age and social background; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032. The Court should grant the motion to transfer only if it is in the interest of justice after consideration of these factors. *Id.* Judge Sweet of this Court has remarked that the "interest of justice" standard and the interpretation of the statute in general "should be informed both by an awareness of the goal of rehabilitation and ... by an awareness of the congressional concern about the threat to society posed by juvenile crime." *United States v. J.D.*, 525 F.Supp. 101, 103 (S.D.N.Y.1981).

Factors

1. *Age and Social Background*

Defendant, born on December 9, 1969, was one month away from his eighteenth birthday at the time he allegedly sold cocaine. Of Hispanic background, he lives with his mother and has not seen his father for some time. He has six brothers and two sisters; one brother is presently incarcerated for automobile theft and another brother was arrested for kicking a door down.[3] The Court has no other relevant information concerning defendant's background.

2. *Nature of the Offense*

Defendant has been charged with three counts of narcotics violations. The first count charges that defendant distributed .57 grams of cocaine, within 1000 feet of a high school, on November 10, 1987. The second count charges distribution of 2.95 grams of cocaine three days later, also within 1000 feet of a high school. The third count similarly charges distribution of 1.47 grams of cocaine on November 17, 1987. Defendant is alleged to have been involved with a number of other individuals who conspired to sell cocaine. Two of his alleged partners were convicted on April 22, 1988 of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute; one of these defendants was also convicted of possession of a firearm in the course of a narcotics crime. Another alleged conspirator has fled and remains at large.

3. *Prior Record*

Defendant has no prior criminal record of any kind.

4. *Intellectual Maturity and Psychological Development*

According to Dr. Portnow's report, defendant attended a public high school in New York City from pre-kindergarten through ninth grade. He transferred to Manhattan Center High School for tenth grade, but dropped out at age seventeen because, according to him, "I got lazy." After quitting school, he stayed at home with his mother, who supported him. He then obtained a job in a gas station, then work as a security guard and finally a position in a summer youth action program. Defendant reports to Dr. Portnow that he quit his last job because he was only making $2.70 an hour, and he refuses to work for such a small sum. Dr. Portnow reports that defendant, though heterosexually active, does not appear promiscuous, claims

2. Defendant contends that the Attorney General must certify that the juvenile court or other state court refuses jurisdiction. This argument is misplaced since the statute, by using the word "or", allows for three alternative bases of certification.

3. This information comes from the report, dated January 5, 1989, filed by the examining psychiatrist, Dr. Stanley Portnow.

to drink alcohol only at parties and strenuously denies ever taking "street drugs".

Dr. Portnow describes defendant as uncooperative, disinterested and unconcerned. His thoughts are somewhat disorganized and, though his speech is logical and relevant, it is not always coherent because he swallows his words. The doctor concludes that defendant's intelligence is normal to dull normal, that he has good judgmental capacity and that defendant does not suffer from any mental illness. Instead, he suffers from a "disordered personality", lacks maturity in his wishes, accepts little responsibility for himself, and projects blame onto others.

### 5. *Nature of Past Treatment Efforts*

Defendant does not appear to have undergone any psychiatric or psychological treatment in the past.

### 6. *Program Availability*

The government implies that juvenile detention programs exist, but states that it "does not believe that [defendant's] deliberate involvement in very serious crimes involving distribution of cocaine can be adequately treated in typical juvenile detention programs." Bucknam Affidavit at ¶ 7(f). Defendant contends, through counsel, that the government admits the availability of programs, but simply argues that such programs are unsuitable. Affidavit of Roland Thau, dated August 18, 1988, at 5. Defendant then argues that many suitable programs are available and that the government has not even attempted to demonstrate why this defendant could not benefit from these programs.

Analysis

■ The Court, after balancing the various interests and considering the evidence presented, concludes that in the interest of justice transfer is not warranted. The Court gives particular weight to two factors. First, the Court finds it significant that defendant has no prior contact with the criminal justice system. On the theory that the special treatment given juveniles reflects, at least in part, rehabilitative goals, a lack of a criminal record suggests the hope that this defendant may

benefit from juvenile treatment, avoiding the harsh consequences of adult status. Also of particular significance is Dr. Portnow's conclusion that defendant lacks maturity, is unable to accept responsibility fully and shifts blame to others. Although defendant may have good judgmental capacity, he appears not to have the ability to accept the responsibility that flows from errors in judgment. In the *J.D.* case, Judge Sweet determined that, with regard to the psychological maturity factor, the Court should view "immaturity and lack of development as factors weighing against transfer to adult status ..." 525 F.Supp. at 104. This Court agrees and finds that defendant's immaturity in this case suggests transfer is inappropriate.

The other factors to be considered, in particular past treatment efforts and availability of programs, also tip the scales, albeit more slightly, in the direction of maintaining defendant's juvenile status. Defendant has had no past psychological treatment and may or may not benefit from such programs. At the very least, the record does not indicate that past efforts were not fruitful, a fact that might weigh in favor of transfer. Similarly, it appears that a number of juvenile programs are available for defendant, and the government has not specifically indicated why this defendant would not benefit from these programs or why these programs would be unsuitable for this defendant.

The only factors that weigh in favor of transfer at all are defendant's age and the nature of the offenses alleged. The Court finds that these factors, on balance, do not indicate that transfer is appropriate. Although defendant was almost eighteen at the time of the alleged crimes, a point the government stresses, he was not eighteen yet, and Congress has decided that those persons under that age should be treated separately. The cutoff date is of course somewhat arbitrary, but a line must be drawn somewhere and Congress has drawn it at age eighteen. While the Court believes that the closer a juvenile is to eighteen may indicate that transfer is more appropriate than not, that fact alone is not dispositive, and it should be viewed in the context of the other factors.

■ Similarly, while the offenses alleged, the sale of cocaine near a school, are quite serious, it is the seriousness of this offense which gives the government the opportunity to seek transfer. First, the Attorney General's certification giving the Court jurisdiction relies on the fact that the alleged offense is one described in 21 U.S.C. § 841. Second, the government makes its motion to transfer on the basis that defendant is "a juvenile fifteen years and older alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence or an offense described in section 841 ... of title 21 [of the United States Code]." *see* Bucknam Affidavit at ¶ 5 (quoting 18 U.S.C. § 5032). If the nature of the offense, which itself gives rise to jurisdiction and the right to seek transfer, were sufficient to warrant transfer, then the Court would have little to consider. When the nature of the offense gives rise to the motion itself, as it does here, the nature of the offense warrants transfer only when some feature of the alleged crime makes treating the defendant as an adult more appropriate than as a juvenile. Defendant is not alleged to have been armed, a factor deemed significant in a subsequent decision in the *J.D.* case. *United States v. J.D.*, 525 F.Supp. 107, 110 (S.D.N.Y.1981). Defendant did not commit a violent crime in the sense that he is not alleged to have inflicted any *immediate* bodily harm, nor are the circumstances of this case heinous or striking.[4] For these reasons, the Court does not believe that the nature of the offenses alleged weigh in favor of transfer.

Conclusion

For the reasons stated above, the Court denies the government's motion to transfer the defendant to adult status.

SO ORDERED.

---

**4.** The Court stresses the word "immediate" since it is clear that selling illegal drugs causes bodily and other harm to the users of these drugs, as well as to society as a whole.