**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roosevelt BUCHANAN, Defendant-Appellant.**

**No. 75–1585.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1975.

Decided Dec. 30, 1975.*

Rehearing and Rehearing En Banc Denied Jan. 30, 1976.

Certiorari Denied April 26, 1976. See 96 S.Ct. 1725.

---

* This appeal was originally decided by unreported order of December 30, 1975. See Circuit Rule 28. The court has subsequently decided to issue the decision as an opinion.

Charles M. Shaw, Allan Goodloe, Jr., Clayton, Mo., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

PER CURIAM.

On March 4, 1975, a person who had entered the United States Post Office in East Carondelet, Illinois, struck the postmistress, Charlotte H. Wheatley, on the head with an iron instrument. Ms. Wheatley suffered multiple skull fractures and brain lacerations from which she died on March 11, 1975. At the time of the assault four United States postal money orders were stolen from the post office.

A latent palm print, identified as that of Roosevelt Buchanan, was removed from the counter of the East Carondelet post office by an FBI fingerprint expert.

Subsequently, a letter addressed to the Harrisonville Telephone Company was retrieved by a postal inspector from a post office box from which defendant received mail. After obtaining a search warrant the inspector opened the letter. Inside was a United States postal money order payable to the telephone company and signed by the defendant. The money order was one of the four stolen from the post office on the day of the assault.

Another of the stolen money orders, with blood on it, was received by Lucille Smith from Roosevelt Buchanan. Arlene Drake received another of the money orders from Buchanan for rent. The three money orders corresponded to debts owed by the defendant for his rent, his telephone bill, and his electric bill. The customer's copies for the three money orders were found on the person of the defendant.

The defendant was arrested in East St. Louis at 8 P.M. on March 6, 1975 by United States Postal Inspectors. They advised him of his constitutional rights. A short time later he admitted the assault on Ms. Wheatley and the taking of the money orders and some cash. The confession was put in writing; the defendant signed it.

After the arrest the defendant's home was searched pursuant to a search warrant. On the porch, a truck lug wrench was found. Inside the home were found a card and an envelope with the money order amounts written on them. The officers also seized a pair of shoes.

Hair from the victim's head was found on the wrench. Her blood was found on the wrench, on one of the defendant's shoes, and on one of the money orders. The defendant's fingerprints were found on one of the money orders and on two of the envelopes enclosing the money orders. The defendant's handwriting and printing were found on the three filled out money orders and the enclosure envelopes.

Roosevelt Buchanan was indicted in a two-count indictment; Count I charging him with the offense of killing an employee of the United States Postal Service while the employee was performing official duties, in violation of 18 U.S.C. § 1114; the second count charging him with robbing mail matter or money from a person having lawful custody of the property and putting the life of that person in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. § 2114.

A pretrial hearing was conducted relating to the voluntariness of the confession. The hearing showed that the defendant was twice warned of his rights before he confessed. The motion to suppress the confession was denied.

At trial the defendant admitted that he had been advised of his rights and that there had been no physical coercion. He testified that he assaulted the postmistress because two masked men threatened him and threatened to kill his son unless he committed the assault; that these men robbed the post office of the money, but that he had paid for the

money orders. A jury found the defendant guilty of both charges.

This appeal is from that conviction. The defendant has alleged a number of trial errors, any or all of which he claims require a reversal.

## I

■ At the start of the trial the defendant objected to the jury venire. Since he was black and the victim was white, he contended that the venire lacked a sufficient number of prospective jurors from minority racial groups. Seven of the forty-one veniremen were black. Since the trial was held in East St. Louis, which has a large black population, the defendant argued that the venire should have contained more black members.

The trial court correctly overruled defendant's objection. The venire was drawn from the county where East St. Louis is located and also from the surrounding counties according to a jury selection plan adopted and approved in accordance with 28 U.S.C. §§ 1861 et seq. As the trial judge noted, the seventeen percent of blacks on the venire represented an even higher percentage of nonwhite citizens than exists in the pertinent area covered by the plan.

The defendant neither claimed nor alleged a systematic exclusion of blacks. Accordingly, there was no constitutional flaw in the selection of the jury venire from which the jury was selected. *Apodaca v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).

## II

■ The defendant contends that the trial judge committed reversible error by permitting the Government to elicit from a government witness the fact that a search warrant had been obtained before entering the post office box rented by the defendant and the fact that a second search warrant had been obtained to search the defendant's home and seize certain items that were admitted into evidence. He states that the evidence regarding the issuance of the warrants was neither relevant nor material. The defendant asserts that: "[this evidence] was also detrimental to defendant in that it gave an aura of judicial credence to the fact that there was information that indicated the guilt of this defendant." He sums up his argument by saying that since the searches were not in controversy the evidence about them was irrelevant and prejudicial.

Defendant's contention is totally without merit. The legality of a search is always relevant and the evidence that search warrants were issued, although perhaps not material in a strict sense, was not prejudicial to the defendant's case. Even should there have been error in the admission of this evidence, it was harmless error.

## III

■ Defendant objects to the admission into evidence of a so-called "Postal Inspection Service Warning and Waiver of Rights" form which had been signed by the defendant before he confessed. The form contained the required *Miranda* warnings. The defendant states in brief: "The admission of any document such as [this form] which invades the province of the Court, and purportedly forecloses the Court from ruling on the issue of the validity of the waiver of the '*Miranda*' rights is so detrimental to the rights of the defendant as to be prejudicial error."

The argument is frivolous and merits no discussion.

## IV

■ Defendant claims prejudicial error by the admission into evidence of his written confession. His argument is that "[t]he testimony at trial leaves no doubt that the will of the defendant was overborne by the arresting officers." As indicated previously, a hearing was conducted by the trial judge on a motion to suppress the confession prior to trial. We have reviewed the record and rule that the judge had ample reason to deny the motion. A trial court's findings, including credibility, on the question of a

defendant's confession. must be sustained unless clearly erroneous. *United States v. Crovedi*, 467 F.2d 1032, 1036 (7th Cir. 1972), *cert. denied*, 410 U.S. 982, 93 S.Ct. 1510, 36 L.Ed.2d 178, *cert. denied*, 410 U.S. 990, 93 S.Ct. 1510, 36 L.Ed.2d 189. There was no showing that the defendant's will was by physical or psychological means overborne by the officers.

■ The defendant testified at trial that he did not know what was happening when he confessed; that his wife was threatened and that answers were suggested. In addition, he claims that the statement was a "selectively prepared document concocted by the arresting officers." The manner in which the confession was obtained and its voluntariness were issues before the jury. The jury was required to make credibility determinations. The trial judge correctly instructed the jury with regard to the issues concerning the confession. There was no error in its admission.

### V

■ Defendant contends that it was reversible error for the trial judge not to grant his motions for judgment of acquittal at the close of the Government's case and at the close of all the evidence. He argues in his brief: "Without the inclusion of the alleged confession, which Defendant maintains was improperly admitted, this case becomes a circumstantial evidence case, as there were no witnesses to the offenses in the indictment." The answer to his argument is twofold. First, as we have ruled, the confession was properly admitted into evidence. Second, even without the confession there was sufficient circumstantial evidence, viewed in the light most favorable to the Government, for the jury to find the defendant guilty as charged beyond a reasonable doubt. We shall not attempt a more detailed recitation of that evidence than that stated in the preceding paragraphs of this opinion.

### VI

■ Over objection the trial judge instructed in pertinent part:

If it be shown that the Defendant used a dangerous weapon in the commission of a homicide, then you may find, from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice which is an essential element of the offense. . . . A "dangerous weapon or device" includes anything capable of being readily operated, manipulated, wielded or otherwise used by one or more persons to inflict severe bodily harm or injury upon another person.

The defendant contends that these instructions raised a presumption that a truck lug wrench is a dangerous weapon. He argues in his brief: "A lug wrench is not 'per se' a dangerous weapon; . . a weapon has to be more than just capable of producing death or great bodily injury to be a dangerous weapon. . . [It] must be *likely* to produce death or great bodily injury when used, as with a gun, an axe, or a large knife."

The complete answer to this contention is found in *United States v. Johnson*, 324 F.2d 264 (4th Cir. 1963). There the court said of a metal and plastic chain:

While it may not be a dangerous weapon per se . . . almost any object "which as used or attempted to be used may endanger life or inflict great bodily harm" . . . or which, as it is sometimes expressed, "is likely to produce death or great bodily harm," . . . can in certain circumstances be a dangerous weapon. . . . Not the object's latent capability alone, but that, coupled with the manner of its use is determinative.

324 F.2d at 266.

There was no error in giving these instructions.

### VII

Defendant next contends that it was prejudicial error for the trial judge not to have required the Government to elect whether to proceed on Count I or Count II of the indictment, and that the judge erred in giving instructions that

covered both offenses, thereby putting the defendant as a matter of law twice in jeopardy. He argues that an assault is a lesser included offense in a murder charge inasmuch as the assault is an essential element of both offenses.

 That one or more of the elements of two offenses are the same is not controlling. The offenses described in Counts I and II are distinct. One may be committed without having committed the other. In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court said:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . . "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

Here, as the Government points out in its brief, there is no element of robbery in Count I but robbery is an element of the offense charged in Count II. There is no element of killing in Count II, but that is an element in Count I.

 The trial judge committed no error in not requiring the Government to elect between the counts or in charging the jury as he did on this matter.

### VIII

 Finally, the defendant contends that the trial judge should have given his instruction on the defense of coercion, based on his trial testimony that two masked men in the post office while he was there threatened to kill his "little boy and any one else that gets in our way" and to blow the defendant's "brains out" unless he picked up the lug wrench lying on the floor and "bashed her [Ms. Wheatley's] head in." Defendant argues that the proffered instruction to the effect that coercion or compulsion may provide a legal excuse for the crimes charged against him should have been given.

 It was not error for the trial judge to deny the requested instruction. As the Government points out in its brief, there was no evidentiary basis for a coercion instruction with regard to Count II. Count I charged murder and coercion is not a defense to murder. *R. I. Recreation Center v. Aetna Casualty and Surety Co.,* 177 F.2d 603 (1st Cir. 1949); 40 A.L.R.2d 908, 909 § 1. *See also Shannon v. United States,* 76 F.2d 490 (10th Cir. 1935).

In summary, the trial judge committed no reversible errors; though perhaps, one harmless error. Accordingly, the judgment of conviction is affirmed.