**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Roy Mason ALEXANDER,
Defendant/Appellant.**

**No. 81–1542.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1982.

Decided Dec. 28, 1982.

Keith C. Monroe, Monroe & Riddet, Santa Ana, Cal., for defendant/appellant.

Raymond J. Coughlan, Jr., Asst. U.S. Atty., argued; William H. Kennedy, U.S. Atty., Raymond J. Coughlan, Jr., Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff/appellee.

Before ANDERSON, SKOPIL and CAN-BY, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Alexander appeals a judgment on four counts of first-degree murder and four counts of murder committed in the perpetration of a felony (robbery). After a jury found Alexander guilty on all eight counts, District Judge Nielsen sentenced Alexander to four consecutive life sentences on the first-degree murder counts, set to run concurrently with four consecutive life sentences on the felony murder counts. We affirm.

## I. DISCUSSION

Alexander presents three issues on appeal. First, did the district court abuse his discretion in ordering Alexander, a juvenile, transferred for trial as an adult? Second, were the jury instructions prejudicially conflicting? Third, did the district court err by failing to conduct an evidentiary hearing on Alexander's motion for a new trial?

### A. Transfer to Adult Status

■ Shortly after Alexander was charged with juvenile delinquency, the United States Attorney moved pursuant to the Federal Juvenile Delinquency Act, 18 U.S.C. § 5032, to have Alexander "transferred" for prosecution as an adult.[1] There is no dispute the prerequisites for such a motion were met—Alexander was sixteen years of age at the time of the murders for which he was charged and the crimes, if committed by an adult, were felonies subject to imprisonment for at least ten years or more, or for life. Also, as the statute requires, the district court held a hearing on the motion and entered findings.

In § 5032, Congress expressly requires a district judge to condition his decision to transfer a juvenile to adult status on whether it will be in the "interest of justice." To guide that decision, Congress has directed the court to consider and make findings on the following six factors: (1) the juvenile's age and social background; (2) the nature of the alleged offense; (3) the prior record of the offender; (4) the juvenile's intellectual development and psy-

---

1. The pertinent portion of 18 U.S.C. § 5032 reads:

   A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the ap-

   propriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.

   Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

chological maturity; (5) the nature of and response to past treatment; and (6) the availability of programs designed to treat the juvenile's problems. Alexander contends the judge abused his discretion by basing the decision to transfer solely on the nature of the crime involved in disregard of the other factors.

There is no dispute, nor do we believe there could be, that as long as certain requirements are met—age of the accused, gravity of the possible penalty, motion by the United States Attorney, a hearing and findings by the court—the decision to transfer a juvenile to adult status is within the sound discretion of the district judge. Discretion is necessarily inherent in a decision that is made "in the interest of justice." The scope of that discretion, however, has not been expressly addressed by this court or, as far as we have found, any of the other circuit courts.[2] In *United States v. Hayes,* 590 F.2d 309 (9th Cir.1979), this court, interpreting 18 U.S.C. § 5032, ruled that the decision to accept a tendered admission to a juvenile delinquency informa-

tion is discretionary; it was not an abuse of discretion to reject that tender when the Assistant United States Attorney was attempting to receive permission to proceed with a motion to transfer the accused to adult status. Although not squarely presented with the issue, the court also stated the decision to order the transfer itself is discretionary. *Hayes,* 590 F.2d at 311. That statement is quite clearly correct.

We do not find it necessary to attempt to completely outline the parameters of a proper exercise of discretion in this case. Congress has laid the groundwork in the factors it requires the court to consider. Furthermore, Alexander makes a narrow argument: the district judge abused his discretion by basing his decision on one factor—the gravity of the offense. We are able to reject Alexander's argument for two reasons. First, it is incorrect to state the judge based his decision solely on the nature of the offense. Quite clearly, all the factors were considered and findings were made as to each.[3] The statute itself re-

---

**2.** For an insightful discussion of the application of 18 U.S.C. § 5032's factors and the exercise of two trial courts' discretion in the decision to order a transfer to adult status, see *United States v. E.K.,* 471 F.Supp. 924, 930–932 (D. Oregon 1979), and *United States v. J.D.,* 525 F.Supp. 101 (S.D.N.Y.1981).

**3.** The judge's findings were as follows:

My finding on the first one is that Mr. Alexander is sixteen years old, having been born on December 9, 1964, and his social background is of a middle class or upper-middle class American family, raised in a relatively good neighborhood with an intact family, father and mother still together.

The third factor, of course, is the extent and nature of his prior delinquency record and, of course, he has none. That's certainly to his advantage in one way, and perhaps to his disadvantage in another, because we don't know what treatment of his condition and what effect it would have.

His present intellectual development and psychological maturity I find to be, his intellectual development to be at least average, if not above average, and it appears his psychological maturity is that of an average 16-plus year-old who, in the words of the principal of his school, relates both to his peers and to adults, that he is markedly improved in his maturity during this year at the school.

The fifth criteria, that of the nature of past treatment efforts and the juvenile's response to such efforts, I find to be neutral as there have been no past treatment efforts, so we can't gauge his response to the efforts.

The sixth criteria, the availability of programs assigned to treat his behavioral problems. I suspect that the Court must, at the moment, at least, give special credence to the testimony of Mr. Look as to the availability of places such as the Ventura School or in the Court's experience in the past, places like the Emerson House in Denver, Colorado, which Judge Byrnes referred to in his opinion in *EK.*

One of my problems, and I should say this is the most difficult and heart-rending judicial decision that I think I have had to make since trying some death penalty cases as a Superior Court Judge.

And we get back to criteria number two, the nature, extent and nature of the alleged offense, and that is over-whelmingly grievous and serious. And it's at a point now that I return briefly to criteria six, the availability of programs designed to treat the juvenile's behavior problems, and I, at this point, don't really know what those terrible problems may be, but I think I have to find that the interests of justice require me to grant the transfer motion.

quires no more. Second, we are unpersuaded it is an abuse of discretion to find one factor more compelling than the others. The findings indicate the judge believed all of the factors except two were either neutral or cut both ways. The judge recognized that the availability of programs to treat Alexander pointed in favor of denying the motion. The judge determined, however, that the nature of the crime alleged, the premeditated murder by multiple gunshot wounds of four individuals, including a two-year-old child, clearly outweighed the availability of treatment factor. It is evident the judge was unpersuaded that availability of treatment would necessarily lead to rehabilitation; the grievous nature of the crime was such that the judge wanted more than a glimmer of hope of rehabilitation.[4] Judge Nielsen's emphasis on the lack of a likelihood for rehabilitation in light of the nature of the crime was not an abuse of discretion.

The manifest purpose of the Federal Juvenile Delinquency Act is to aid in the rehabilitation of juveniles who have been determined to have engaged in crime. S.Rep. No. 93–1011, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News, pp. 5283, 5320. A decision to transfer a juvenile to adult status is a prediction of the possibility of rehabilitation if in fact the juvenile is found guilty of the crime alleged. As stated by Judge Burns in a thoughtful analysis of the difficult determinations necessary in this prediction:

> [A] balance must be struck somewhere and somehow between providing a rehabilitative environment for young offenders as well as protecting society from violent and dangerous individuals and providing sanctions for anti-social acts. And that balance must be struck by the district court in the context of a transfer hearing.

> With the gravity of the offenses, I can't see the interest of justice in requiring the court to treat Mr. Alexander as a juvenile, knowing that regardless of what treatment he receives or what his response to it is, that he must under any and all circumstances be totally and completely released from any legal bond of any kind at age twenty-one.

*United States v. E.K.*, 471 F.Supp. 924, 932 (D. Oregon 1979). In light of the inconclusiveness of the other § 5032 factors and the gravity of the crime involved, we cannot say Judge Nielsen struck that balance improperly.

### B. *Erroneous Jury Instruction*

Alexander contends the jury instructions were in prejudicial conflict warranting a new trial. We disagree.

The court first instructed the jury that "[c]oercion or duress may provide a legal excuse for the crime of robbery. It is not a legal excuse for the crime of murder." Reporter's Transcript at 736. At Alexander's request, the court also instructed the jury on the elements of voluntary manslaughter, adding the statement: "Acts causing death but committed under duress or coercion and without malice aforethought may constitute voluntary manslaughter." Reporter's Transcript at 739.

The United States argues the manslaughter instruction was improperly given. *See United States v. Buchanan*, 529 F.2d 1148, 1153 (7th Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976). We find it unnecessary to decide that question. It is sufficient to note that the jury must have found malice aforethought present when the homicides occurred in order to convict Alexander of first-degree murder. A finding of malice aforethought would necessarily make it impossible for the jury to consider Alexander's voluntary manslaughter instruction. Also, and perhaps more importantly, Judge Nielsen's instruction stated duress or coercion could be a defense to robbery. Nonetheless, the jury found the defendant guilty of felony murder based on robbery. The jury simply did not believe duress or coercion

Reporter's Transcript at 78–80.

4. The judge was clearly concerned that if proceeded against as a juvenile, Alexander would have been released, rehabilitated or not, when he turned 21.

guided Alexander's acts. Any error due to the arguable conflict was clearly harmless. *See United States v. Thompson,* 493 F.2d 305, 310 (9th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). In any event, any conflict inherent in the instructions resulted from Alexander's proposal of the voluntary manslaughter instruction. He is precluded from arguing on appeal errors which he invited. *See United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229 (1977); *United States v. Gray,* 626 F.2d 494, 501 (5th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981).

### C. *Motion for New Trial*

Alexander raises two issues with respect to the denial of his motion for new trial. First, he argues the court abused its discretion by failing to hold a full evidentiary hearing on the matter. Second, he argues that in denying the motion the court improperly considered the failure of Alexander to produce the results of a polygraph examination.

▮ The decision to hold a hearing or to proceed by affidavit as done here is within the sound discretion of the trial court. *United States v. Nace,* 561 F.2d 763, 772 (9th Cir.1977). There was no abuse of discretion in this case. The affidavit in support of the motion only went to impeach the testimony of a witness called to rebut the testimony of Alexander. Evidence which is merely impeaching is not sufficient to support a motion for new trial. *Nace,* 561 F.2d at 772; *United States v. Diggs,* 649 F.2d 731, 739 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). Also, the testimony was cumulative as Alexander had already used a witness at trial to impeach the government's rebuttal witness. Evidence which is cumulative is insufficient to warrant a new trial. *Diggs,* 649 F.2d at 739. We see no abuse of discretion in the failure to hold a full hearing when the affidavits themselves established the evidence was insufficient to support the motion.

▮ The contention that Judge Nielsen improperly based his denial of the motion for a new trial on the failure of Alexander to produce the results of a polygraph examination lacks merit. First, while we do not dispute there was some discussion between defense counsel and the judge on this issue, there is no support whatsoever for the assertion the judge *presumed* the failure to produce the results meant Alexander failed the test. Second, we have already noted that the evidence adduced by Alexander was insufficient to support the motion. Consideration of the polygraph test or not, the motion was properly denied.

### II. CONCLUSION

Judge Nielsen did not abuse his discretion by ordering Alexander tried as an adult. Any conflict in the jury instructions was either harmless or invited by Alexander. The motion for a new trial was properly denied with or without a full hearing.

The judgment of the district court is AFFIRMED.