UNITED STATES of America, Plaintiff,

v.

DENNISON, A.L. (a child), Defendant.

Crim. No. 86–353.

United States District Court,
D. New Mexico.

Dec. 9, 1986.

David N. Williams, Asst. U.S. Atty., for plaintiff.

Stephen P. McCue, Asst. Federal Public Defender, for defendant.

## MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER came before the Court for hearing on the Government's Motion to Transfer the Defendant juvenile to adult status pursuant to 18 U.S.C. § 5032 of the Federal Juvenile Delinquency Act. The Motion to Transfer the Defendant to adult status was originally to have been held on November 12, 1986. At that hearing the Court granted the Defendant's Motion to Continue Transfer Hearing so that the child could secure a psychological evaluation in preparation for the hearing. The child specifically waived his rights to a speedy trial with respect to any delay caused by the Motion to Continue the Transfer Hearing.

The hearing on the Motion to Transfer was held two weeks later on November 26, 1986. Before the Court could hear the Motion to Transfer, however, it was necessary to address several preliminary motions which had been filed by the Defendant shortly before the second hearing date. Each of the motions shall be treated individually below.

## MOTION TO DISMISS

Defendant's Motion to Dismiss the Information, Certification and Motion to Transfer was filed just two days before the second scheduled date for a hearing on the Motion to Transfer. As grounds for the Motion to Dismiss, the Defendant cited alleged defects in the certification and Motion to Transfer filed by the Government in the instant case. Each of the procedural challenges requires separate analysis.

■ Section 5032 of Title 18 requires that the Attorney General of the United States file a certification described in that section before proceeding against a juvenile federally. Defendant asserted that the Certification filed in this case is deficient on its face because it does not reflect that any investigation occurred prior to the filing. This argument lacks merit, however, as Section 5032 does not require that the fact of an investigation be contained within the certification itself.

■ The Certification does state that the offense described in the information is not within the jurisdiction of the courts of New Mexico and that this Court has exclusive jurisdiction for the purposes of the Federal Juvenile Delinquency Act. Defendant contends that Section 5032 further mandates the Government to state in the certification that "there is a substantial federal interest in the case or the offense to warrant the exercise of federal jurisdiction." 18 U.S.C. § 5032. Although the provision does seem to require such a certification, this technical deficiency should not be permitted to override the court's jurisdiction of this case. The information filed of the same date alleges that the Defendant killed an Indian named Jack Jones with malice aforethought. The gravity of the offense as cited in the information when combined with the certificate of exclusive jurisdiction could support no other conclusion than that there is substantial federal interest in the case and the offense to warrant the exercise of federal jurisdiction.

■ The child further asserts that he is entitled to dismissal because the Certification was signed by the U.S. Attorney rather than the Attorney General. He is correct that on its face there is no indication that the U.S. Attorney has the authority to file the Certification. However, the Attorney General has delegated the power to institute juvenile proceedings to his Deputy Assistant Attorney General and the Assistant Attorney General in charge of the Criminal Division. 28 C.F.R. § 0.57 (1986). These individuals are further specifically authorized under the provision to re-delegate the power to file a certification to U.S. Attorneys. Thus, the power to file the certification could have been delegated to the U.S. Attorneys. In fact, the Assistant Attorney General in charge of the Criminal Division has, by Order dated October 16, 1974, effected such a redelegation. *United States v. Cuomo*, 525 F.2d 1285, 1287–1289 (5th Cir.1976); *See also United States v. Bent*, 702 F.2d 210 (11th Cir.1983). There-

fore, the Defendant's Motion to Dismiss the certification was not well taken and was denied.

The alleged deficiency in the Motion to Transfer creates a similar, yet more problematic, analysis. As in the Certification, the Motion to Transfer was filed by the U.S. Attorney. Again, the Attorney General has delegated the power to institute a Motion to Transfer to the Assistant Attorney General in charge of the Criminal Division and to his Deputy Assistant Attorney General. 28 C.F.R. § 0.57 (1985). Unlike the certification delegation, United States attorneys have not been given blanket authority to file motions to transfer juveniles to adult status.

The Eighth Circuit has held that the filing of a motion to transfer by an individual who is not technically authorized to do so is not necessarily fatal to jurisdiction. If the decision to file a motion for transfer is made by an individual authorized to do so by the Attorney General or his delegate, the motion is sufficient to confer jurisdiction to the court. *United States v. Parker*, 622 F.2d 298, 307 (8th Cir.1980).

In this case, a Motion to Transfer was filed by the U.S. Attorney prior to obtaining a decision from the Attorney General or his delegate. Counsel for the Government represented to the court that within two days after filing the Motion to Transfer, the U.S. Attorney's office received telephonic authorization from the office of Lawrence Lippe, Chief of the General Litigation and Legal Advice Section of the Criminal Division of the Department of Justice to request transfer. At the November 26th hearing the Government filed with the Court a letter from Mr. Lawrence Lippe authorizing the filing of the Motion to Transfer.

Section 5032 provides for the filing of a motion to transfer after the decision has been made by the Attorney General or his delegate. In this case, the Government argued that the telephonic approval two days after filing and the letter from Mr. Lippe authorizing a motion to transfer, constituted ratification of the filing of the mo-

tion. Counsel for the Government asserted that the ratification should be found to cure any defect because there was no prejudice to the Defendant.

■ Counsel for the Defendant agreed that if the Motion to Dismiss was granted, the Government would simply refile the Motion to Transfer. The Defendant alluded to a possible problem with his waiver of the speedy trial time for continuance of the Motion to Transfer hearing. Counsel for the child speculated that if based upon an invalid Motion to Transfer, his waiver may also be invalid. Yet, Defendant alerted the Court to a possible defect in the Motion to Transfer only two days prior to the second scheduled hearing. Because I find that the Defendant knowingly waived his right to speedy trial on a then presumed to be valid Motion to Transfer, no purpose other than delaying the proceedings would be served in granting the Motion to Dismiss. Therefore, on the basis of the later ratification by properly delegated officials and the lack of prejudice to the Defendant, the Motion to Dismiss was denied.

## MOTION FOR PRODUCTION OF PRIOR JUVENILE RECORDS

■ Section 5032 of the Federal Juvenile Delinquency Act provides that "any proceedings against a juvenile under this chapter or as an adult shall not be commenced until any prior juvenile court records of such juvenile have been received by the court...." 18 U.S.C. § 5032. The Defendant moved for production of prior juvenile records before any hearing on the Motion to Transfer. In the Defendant's Motion, however, the Defendant did not indicate to whom an order to produce should be directed. At the hearing on the Motion to Transfer, counsel for Defendant argued that the hearing must be discontinued until the records pertaining to the juvenile had been received from all courts which had any such records.

I agree with counsel for the Government that such a broad construction of § 5032 would render the production of juvenile

records impossible. Rather, I interpret the provision to require that prior juvenile records be produced from the district in which the proceedings take place. Based upon the assurance of the U.S. Attorney that no such records pertaining to this child exist within this district, and the representation that any records of which the U.S. Attorney's office had knowledge would be presented at the transfer hearing, the Motion for Production was denied.

## MOTION FOR DISCOVERY

█ The Defendant had moved for Rule 16 discovery and for *Brady* material. Counsel for Defendant framed the need for discovery as an issue of whether or not he could provide effective assistance of counsel in its absence. Although this Court recognizes that a juvenile is entitled to fundamental fairness and due process in the transfer hearing setting, this Court is unwilling to hold that the criminal discovery devices should be available in juvenile proceedings. Rather, the right to discovery under the Federal Rules of Criminal Procedure arise upon the granting of a motion to transfer to adult status. The Motions for Discovery were therefore denied.

## MOTION TO SUPPRESS

█ Defendant contended that his waiver of *Miranda* rights was involuntary such that statements made by the child after the waiver should be suppressed at the motion hearing. At the request of counsel for defense, the Court reserved ruling on the Motion to Suppress and admitted the child's statements conditionally. Because of my findings on the Motion to Transfer and ruling in Defendant's favor, the Motion to Suppress statements at the transfer hearing is moot and will be denied.

## MOTION TO TRANSFER

█ After ruling on the above-noted preliminary Motions, the Court received evidence on the six factors listed in 18 U.S.C. § 5032. The witnesses who testified at the closed hearing included the F.B.I. special agent assigned to the case, the Tribal probation officer, two of the child's teachers, both of the child's parents, the child's sister, a psychologist, a psychiatrist, and a counselor from the Valencia County Detention Facility. An examination of the factors aids the Court in assessing whether a transfer would be in the interest of justice. For the sake of clarity, findings as to each of the six factors are set forth below.

### 1. Age and Social Background of the Juvenile:

Dennison is a 16½ year old Navajo Indian from the Shiprock, New Mexico area. The boy is the second youngest of nine children, the two oldest children being his half siblings. Until his detention, Dennison was the only child then living at home with his mother and father. His parents' home is located in a fairly depressed area of Shiprock and has neither electricity nor running water. One of the child's responsibilities was to chop wood to heat the house which has a dirt floor and one large bedroom.

Dennison's parents speak only Navajo. His 71 year old father says that Dennison is a good student and helps around the house. He expressed concern about the child's drinking, but he is not afraid of Dennison. The child's mother was ambivalent about her fear of the Defendant. Although she denied being afraid of Dennison, she hides knives from him and took a knife away from Dennison in July of this year. She expressed concern with alcohol use by Dennison and indicated that he had come home drunk one time. She is 44 years old and does not know her son's friends or what they do together. His parents have provided Dennison neither the discipline nor supervision which he needs.

Dennison's traditional Navajo upbringing was interrupted in 1983 through 1985 when he lived in Utah with foster parents under a Latter Day Saints Church placement program. During the 1983–1984 school year, Dennison lived with the Sanders family in Trenton, Utah. Apparently, the child had some disciplinary problems with the Sand-

ers. During the 1984 through 1985 school year, Dennison was placed with the Hogan family in North Logan, Utah. The Hogan family had problems with Dennison but refused to identify the problems to the F.B.I. special agent during his investigation.

Dennison returned to Shiprock and his parent's home in 1985. He is a sophomore at Shiprock High School where he has somewhat of a truancy problem, but no disciplinary problems at school. One can only imagine the stark contrast in lifestyle which accompanied his move from Utah back to the reservation.

### 2. The Nature of the Alleged Offense:

The child is accused of stabbing to death a 20 year old Indian male on November 1, 1986. The evidence, if true, indicates that during an altercation with Jack Jones, Dennison used his mother's 13–inch kitchen knife to stab Jones in the back after Jones was knocked to the pavement by Dennison's companions. The juvenile has previously indicated that he had nine 12–ounce beers the day of the killing.

The information charging Dennison with juvenile delinquency alleges that Dennison killed Jack Jones with malice aforethought. Certainly the purposeful taking of a human life is the ultimate of serious crimes. Thus, the gravity of the charge weighs in favor of a transfer to adult status.

### 3. Extent and Nature of Prior Delinquency Record:

Until his second year in Utah, Dennison had no delinquency record. The police in North Logan, Utah related to the F.B.I. special agent investigating Dennison that the juvenile had been involved in some incidents of joy riding and minor burglary in Utah. However, there is no indication that Dennison was ever charged with any misconduct in Utah.

The summer of 1986 appears to be the turning point for Dennison. In July the Navajo Tribal Court system dealt with Dennison on charges of public intoxication and possession of a dangerous weapon.

The probation officer for the Tribe testified that Dennison was given a 20 to 30 minute lecture and referred to an alcohol abuse treatment program. Dennison never contacted the program. In August Dennison was arrested again on public intoxication charges and additionally for criminal entry into the Boy's Club building. There is yet to be a disposition of these charges. Finally, the Tribe charged Dennison with the aggravated battery on Jack Jones who is the victim of the present proceedings.

In conclusion, I find that the juvenile's record of delinquency is relatively recent. Over the past six months, Dennison has been involved in increasingly serious delinquent actions and a correspondingly increasing involvement with alcohol abuse.

### 4. Juvenile's Present Intellectual Development and Psychological Maturity:

All of the evidence shows Dennison to be of average to high average intelligence and of average maturity for a 16 year old. Two of Dennison's teachers indicated that he does average work in school and was not a disciplinary problem. Both teachers would welcome him back to their classrooms. The psychologist and psychiatrist confirmed the teachers' impression regarding Dennison's intelligence and maturity level.

The psychologist and psychiatrist characterize Dennison as a highly dependent personality. The psychologist speculated that Dennison's recent history with violence was in part due to a failure of his parents to provide for his dependent personality. Moreover, Dennison is primarily bonded to three of his siblings, all of whom had left the Shiprock home by the time he returned from Utah.

Psychological tests which were given to Dennison included the Minnesota Multiphasic Personality Inventory (MMPI), the Millon Adolescent Personality Inventory (Millon) and the Rorschach Evaluation. These tests show that Dennison has a cooperative personality such that he is compliant with

authority figures. They also indicate that he is undergoing depression and anxiety which may be enhanced by alcohol abuse. These tests further show that Dennison has a significant problem with self-restraint and is likely to give in to impulse. The psychiatrist found no underlying psychosis or brain damage, but did feel that Dennison exhibited anti-social tendencies. The psychiatrist stated that Dennison had denied any fascination with knives or machetes, but the evidence was convincing that Dennison has frequently carried a machete with him and he appears drawn to knives.

Both of the experts felt that alcohol enhanced the likelihood that Dennison would exhibit violent behavior. Thus, both experts recommended that Dennison be placed in an in-patient program for alcohol abuse. Only by a long term, three to four year, in-patient treatment do the experts feel that Dennison stands a good possibility of rehabilitation by the time he reaches age 21. I adopt these findings of the experts.

### 5. Nature of Past Treatment Efforts and Juvenile's Response to Such Efforts:

Dennison has not been involved in counselling of any kind except perhaps for the lecture from the Tribal probation officer of 20 to 30 minutes which is basically the sum total of past treatment efforts. Although Dennison was referred to an alcohol treatment program in July, he did not avail himself of the program. Because only in-patient treatment for alcohol abuse will be effective for Dennison, it is unlikely that Dennison would have benefited from the referral program anyway. Thus, no meaningful past treatment efforts have been taken to help Dennison. This factor weighs heavily in favor of rehabilitative opportunity if Dennison is treated as a juvenile.

### 6. Availability of Programs Designed to Treat the Juvenile's Behavioral Problems:

The Court finds that appropriate detention facilities are available to aid Dennison in his rehabilitation. Mr. Sanchez, a counselor at the Valencia County Detention Facility located in Los Lunas, New Mexico, testified that the facility has a program limited to 17 juvenile residents. Presently there are 15 juvenile residents, 13 of whom are Native Americans. This high ratio of Native Americans indicates an ability to deal with the specialized needs of this minority. Four of these juveniles were involved in homicide offenses.

The Valencia County facility program stresses individualized education in and out of class in order to obtain a G.E.D. with college available at the UNM Valencia Campus if desired. The program also deals heavily with counseling, vocational exposure and a drug and alcohol program modeled on the Alcoholics Anonymous group meeting format. I adopt the finding of both experts that a program such as that at Valencia County Facility would give Dennison a good possibility of rehabilitation by the time he reaches age 21.

### THE INTEREST OF JUSTICE

The findings I have made with regard to the above six factors convince me that the interest of justice will be served by denying the Motion to Transfer to adult status. With the exception of the nature of the alleged offense, the balance is struck in favor of treating Dennison as a juvenile. The Government urges me to follow the dicta of *United States v. Alexander,* 695 F.2d 398 (9th Cir.1982). The court in *Alexander* stated, "We are unpersuaded it is an abuse of discretion to find one factor more compelling than the others." *Id.* at 401. The Government argued that the gravity of the alleged crime is such that it outweighs the factors in favor of treating Dennison as a juvenile.

This Court declines to take the Government's position. The juvenile in Alexander was accused of four counts of first degree murder, including the murder of a two year old child. Although the Government produced evidence that Dennison had been involved in other violent acts toward different individuals, the interest of justice would best be served in this specific case

by treating Dennison as a juvenile in furtherance of the rehabilitative purpose of the Federal Juvenile Delinquency Act. See, 18 U.S.C. §§ 5031 through 5042.

Because I find that there is a good possibility that the child can be rehabilitated by the age of 21, the Motion to Transfer is not well taken and is DENIED.