**UNITED STATES of America,**

v.

**M.L.**

**No. SA CR 92–36 AHS.**

United States District Court,
C.D. California.

Sept. 4, 1992.

Stephen G. Wolfe, U.S. Attorney's Office, Santa Ana, CA, for plaintiff.

Paul Stark; and H. Dean Steward, Federal Public Defender's Office, Santa Ana, CA, for defendants.

## OPINION DENYING THE GOVERNMENT'S MOTION TO TRANSFER DEFENDANT "M.L." FOR ADULT CRIMINAL PROSECUTION

STOTLER, District Judge.

### I.

### BACKGROUND

A juvenile information charging defendant M.L., along with his co-defendant R.G., with violations of 18 U.S.C. § 5032 and § 5037 was filed on May 7, 1992. The information charged that defendants committed murder "with premeditation and malice aforethought" by "willfully, deliberately, and maliciously ... stabbing [the victim] and cutting his throat" on March Air Force Base, which would have been a violation of 18 U.S.C. § 7 and § 1111 had the offense been committed by adults.

On July 6, 1992, the Government filed under seal a Motion To Transfer Juvenile Defendant for Adult Prosecution, by which it sought to transfer only defendant M.L. to adult status. Counsel for defendant M.L. simultaneously filed under seal opposition to the Government's motion on July 6, 1992. Defendant filed a "Supplement to Objection to Government's Motion to

Transfer" on July 8, 1992, also under seal. The Court heard oral argument and entertained proffers of evidence at a hearing on July 13, 1992. The Court issued a lengthy written tentative ruling denying the Government's motion as well as an oral ruling at the conclusion of the hearing doing the same. The Court now issues this opinion in order to articulate the applicable burden of proof to which the Government must be held in order to prevail on discretionary motions to transfer under 18 U.S.C. § 5032.

## II.

### THE STATUTORY FACTORS

A juvenile who has committed an act of juvenile delinquency "shall be proceeded against" under the juvenile delinquency chapter unless (1) he has "requested in writing upon advice of counsel to be proceeded against as an adult;" (2) the juvenile was over fifteen years old at the time he committed the felony charged and, after considering the Government's motion to transfer, the Court finds that a transfer would be "in the interest of justice;" or (3) the juvenile who has previously been found guilty of a felony was over age sixteen when he committed the presently-charged violent felony. 18 U.S.C. § 5032.

■ The motion presented by the Government in this case is one for discretionary transfer. Therefore, this juvenile defendant may be transferred for adult criminal prosecution only if the "[C]ourt finds, after hearing, such transfer would be in the interest of justice." *Id.* In order to determine whether a transfer to adult status would be "in the interest of justice," the Court must consider and make findings with regard to the following factors: "the age and social background of the juvenile; the nature of· the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; [and] the availability of programs designed to treat the juvenile's behavioral problems." *Id.* The decision whether to grant a transfer motion is within the sound dis-

cretion of the district judge hearing it; in exercising such discretion, the Court may find that under the circumstances presented, one statutory factor should be given greater weight than the others. *United States v. Alexander,* 695 F.2d 398, 400–01 (9th Cir.1982).

In balancing the statutory factors, the Court must strike a balance "somewhere and somehow between providing a rehabilitative environment for young offenders as well as protecting society from violent and dangerous individuals and providing sanctions for anti-social acts." *Alexander,* 695 F.2d at 401 (quoting *United States v. E.K.,* 471 F.Supp. 924, 932 (D.Or.1979). "It is incumbent upon the court to deny a motion to transfer where, all things considered, [a] juvenile has·a realistic chance of rehabilitative potential in available treatment facilities during the period of his minority ... [in other words,] [w]here realistic chance of rehabilitation exists, the balance ought not to tip in recognition of [broader] societal interests" like retribution or deterrence. *United States v. E.K.,* 471 F.Supp. at 932.

## III.

### THE EVIDENTIARY STANDARD

■ The Ninth Circuit has not adopted an evidentiary standard or applicable burden of proof to which the Government must be held in order to prevail on a discretionary motion for transfer; however, a district court within the Circuit has stated in the context of a discretionary transfer motion that "since the [statutory] presumption is that an offender of a certain age is a juvenile, the facts ought to *clearly convince*" the Court that transfer is warranted. *United States v. E.K.,* 471 F.Supp. 924, 932 (D.Or.1979) (emphasis added). The Court finds that the "clearly convincing" evidence standard enunciated in *E.K.* should be the governing standard with regard to discretionary motions to transfer made by the Government pursuant to 18 U.S.C. § 5032. In other words, the Court may, in its discretion, weight the importance of the statutory factors as it finds appropriate in a particular case; however,

in order to succeed in transferring the juvenile to adult status, the Government must prove by clear and convincing evidence that the presumption of juvenile treatment has been rebutted by those factors, given the due weight accorded them by the Court under the particular circumstances of the case.

## IV.

## APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

Based upon the written submissions as well as the arguments of counsel and proffers of evidence adduced at the hearing, the Court denied the Government's motion to transfer and, in support of its ruling, entered the following findings with regard to the factors outlined in 18 U.S.C. § 5032.

### A. *Age and Social Background of Defendant:*

■ Defendant is sixteen years old and is the second of five children in an intact and supportive family. His father has been in the United States Air Force for twenty years, and his immediate family members have no history of criminal involvement. Moreover, as Dr. Faerstein noted in his June 8, 1992 report after examination of the defendant: "all family relationships are described [by defendant] as good ... [defendant] likes his father and gets along well with him ... [h]e describes his mother as very loving and affectionate, close to all the children ... [he] has no significant history of drug or alcohol abuse ... [and] is not socially or sexually sophisticated or experienced." *See* Ex. 11 to Government's brief.

The Court finds unpersuasive the Government's argument that since defendant is knowledgeable about AIDS, has engaged in sexual intercourse, has consumed alcohol and is aware of local gang activities he is socially sophisticated and therefore should be treated as an adult in this criminal proceeding. Defendant's awareness of social issues and early foray into sexual relations reflect the realities of youth in modern society and indicate that this factor is a neutral one in this case. At the most, his knowledge of gang activities and choice not to participate in them indicates that rehabilitation in the juvenile setting is possible. *See* Ex. 11 to Government brief at page 63–64 (June 8, 1992 report of Dr. Faerstein, in which the doctor concludes that defendant's "ability to reject these social choices [i.e., entry into a gang] reflects strong prosocial attitudes and generally intact social judgment"). Moreover, in light of his intact family and lack of an extraordinary social background, the Court finds that this factor weighs in favor of juvenile treatment. *Compare United States v. B.N.S.,* 557 F.Supp. 351, 352 (D.Wyo.1983) (where juvenile defendant was from a broken and violent home and committed murder, Government's motion to transfer him to adult status was nevertheless denied).

### B. *Nature of the Alleged Offense:*

■ The Government relies on *Alexander,* 695 F.2d at 401 and *United States v. Doe,* 871 F.2d 1248, 1254–55 (5th Cir. 1989) for the proposition that this Court may properly find that the heinous and premeditated nature of this offense outweighs all other statutory factors and mandates adult treatment of defendant. The Court agrees with the Government's characterization of the Court's discretionary power; however, in exercising that power the Court finds that in light of the other statutory factors presented here, the nature of the offense charged does not heavily favor adult treatment.

The documents before the Court support the following summary of the evidence concerning the alleged offense. After an uncharacteristic two-day drinking binge, defendant killed the victim, a reputed gang member with a criminal record who had injured and threatened defendant's friends earlier that evening, by stabbing him several times with a knife he obtained from his family's kitchen drawer. *See* Ex. 6 to Government's brief at 30–31 (defendant's confession); Ex. B to defendant's brief (outline of victim's criminal history). Defendant stated that he continued to stab the victim (thirty times) in order to quiet him, since he feared that the victim's screaming would cause him to get caught and that if he left

the victim only slightly injured then the victim would have him killed. Ex. 6 to Government's brief at 31–32. One psychiatrist who examined defendant, Dr. Faerstein, found that "[a]lthough the offense appear[s] to be brutal, it also appears to be the impulsive result of rage and fear which was fueled by the alcohol in [defendant's] system." Ex. 11 to Government's brief at page 61.

At the hearing, the Government argued that no blood alcohol test of defendant had been performed, so that there is no "hard evidence" that defendant was intoxicated beyond legal limits at the time he committed the offense; the victim's provocative and/or assaultive conduct preceding the murder was not so violent as to warrant the fear and rage towards the victim that the defendant apparently manifested; and that according to his co-defendant R.G.'s statements, the murder occurred approximately an hour after the victim's assaultive behavior, so that defendant M.L. would have had an opportunity to "cool off" before committing the murder. Finally, the Government clarified that it sought defendant's transfer not on the basis of the crime's brutality, but on its apparent premeditated nature.

In response to the Government's arguments, defense counsel for M.L. made the following oral proffers of evidence to the Court at the hearing: (1) that defendant M.L. weighs 120 pounds and had consumed 64 ounces of beer as well as several ounces of vodka and other alcoholic beverages in the six to eight hour period before the offense, so that according to standard calculations his blood alcohol level at that time was over .20; and (2) that M.L. would testify that the lapse of time between the victim's assaultive behavior on his friends and the murder was approximately fifteen minutes. Defense counsel further characterized the situation in which M.L. found himself as "a boiling pot" which finally reached its boiling point on the night of the murder.

The offense—murder—is the most serious known. However, the facts surrounding the commission of the offense do not indicate that the seriousness of it should be so heavily weighted as to call for adult treatment. The offense is unlike that in *United States v. Alexander*, 695 F.2d 398 (9th Cir.1982), where adult treatment of the defendant was found to be warranted and in which defendant killed an entire family execution-style in a public park, including a two-year old girl, apparently in order to obtain the antique weapons the family was using for target practice. *See* declaration of Dean Steward, attached to Supplemental Objection to Government's Motion to Transfer. The instant offense is more akin to the one described in *United States v. Dennison*, 652 F.Supp. 211, 216 (D.N.M. 1986), where transfer was found not to be warranted based on the gravity of the offense alone: the *Dennison* defendant allegedly stabbed a young man with a kitchen knife during an altercation after having consumed several beers. Similarly, in the instant case, since the act seems an aberration and rehabilitation remains possible, the gravity of the offense committed alone does not mandate adult treatment; rather, it merely tips in favor of adult treatment.

### C. Lack of Prior Delinquency Record:

■ Defendant has no prior record of delinquent acts. This fact weighs in favor of treating him as a juvenile, since it increases the likelihood that he can be rehabilitated by the time he reaches age 21.

### D. Defendant's Intellectual Development and Psychological Maturity:

The doctors examining defendant concluded: (1) defendant "speaks in a well articulated voice with above average verbal expressive ability. His thinking processes were goal oriented, logical and intact" (Ex. 10 to Government's brief at page 47); (2) defendant's performance on intelligence tests indicated that defendant "is a bright youngster" (Ex. 10 to Government's brief at page 50); (3) psychological test results indicate that defendant "is functioning above average in terms of general intelligence.... there is [no] evidence of a cognitive or intellectual deficit ... [his] mental status is within normal limits.... [t]here is

no indication of an underlying developing personality disorder. Actually, test results suggest that the [defendant] is relatively well-adjusted. He views himself as calm, stable and mature ..." (Ex. 10 to Government's brief at page 53); (4) defendant appears to regret committing the offense charged here, "stating 'I hate what I did;' 'I am sorry for what I did;' 'I try to forget it;' 'Most of all I want this to be over'" (Ex. 10 to Government's brief at page 52); (5) "[p]sychologically, [defendant] is neither retarded nor sophisticated but would fall into a range of normal developmenta [sic] for a 16½ year old" (Ex. 11 to Government brief at page 61); and (6) defendant "see[s] himself as a very emotionally stable, conforming individual who is self-assured and tends to be relaxed" (Ex. 11 to Government's brief at page 62). The Government contends that defendant's intelligence combined with his apparent maturity favor adult treatment, apparently because he can therefore be presumed to have recognized the magnitude of his actions in furtherance of the offense charged even as he was committing them. Defense counsel focuses on the psychiatrists' report of defendant's "social immaturity" to argue that defendant is not mature; however, the determination of social immaturity weighs in favor of juvenile treatment under the "Age and Social Background" factor, not this one.

■ "Congress itself, in enacting § 5032, gave no indication that psychological maturity would be a factor favoring or disfavoring transfer." *E.K.*, 471 F.Supp. at 936 n. 8. However, at least one court has noted that "the statutory scheme would seem to reflect a determination that [ ] more mature and developed [juveniles] are more likely to be beyond redemption" and therefore concluded that "it is in keeping with the statutory premise ... to view immaturity and lack of development as factors weighing against transfer to adult status and maturity and development as factors weighing in favor of transfer." *United States v. J.D.*, 525 F.Supp. 101, 104 (S.D.N.Y.1981). This Court agrees with the *J.D.* court's assessment that evidence of maturity in a juvenile generally weighs in favor of adult treatment, but notes that as with all the factors under § 5032, the weight accorded a juvenile's maturity is subject to the sound discretion of the judge in each case. *Alexander*, 695 F.2d at 401. In balancing the factors in this instance, the Court finds that defendant's apparent maturity weighs only slightly (if at all) in favor of adult criminal treatment, since it appears that: (1) his intellect and supportive family background have already allowed him to recognize his errors in judgment and the immensity of the wrong he has committed, and he therefore seems ripe for rehabilitation; and (2) given his intellectual ability and expressed desire to "accomplish positive things" in the future (Ex. 10 to Government's brief at 52), the rehabilitative model employed by the juvenile justice system will better serve both defendant and society.

### E. Absence of Past Treatment Efforts:

■ Since defendant has not committed any prior delinquent acts, there is no measure of the probable "success" of juvenile treatment efforts for this offense. However, the lack of past treatment also indicates that defendant has not required such treatment before in order to act within the bounds of society and therefore only minimal rehabilitative treatment in the juvenile justice system will be needed to deter defendant from committing a crime like this one again. Therefore, the Court finds that this factor weighs slightly in favor of juvenile treatment.

### F. Availability of Programs to Treat Defendant:

■ The Federal Government contracts with state and local programs in order to treat and detain juvenile offenders; therefore, a wide variety of rehabilitative programs will remain available to defendant if he is treated as a juvenile. *But see* Ex. 12 to Government's brief at page 68 (*report of Dr. Klatte, who examined defendant, which indicates that defendant "is not in need of a residential treatment program and there is likelihood [sic] that [he] would be apt to be more hurt than helped if placed in a*

residential program with juveniles who have antisocial trends"). The Court finds that this factor weighs slightly in favor of juvenile treatment as well.

## V.

## CONCLUSION

 Based on a balance of the findings noted above, the Court finds that a transfer of defendant from juvenile to adult status is not required "in the interest of justice." Specifically, the Court finds that the Government has failed to sustain its burden of rebutting the presumption of juvenile treatment by clear and convincing evidence. *See United States v. E.K.*, 471 F.Supp. 924, 932 (D.Or.1979). Accordingly, the Court denies the Government's motion to transfer.

IT IS SO ORDERED.