UNITED STATES of America,
Plaintiff–Appellee,

v.

John DOE, Defendant–Appellant.

No. 88–5601.

United States Court of Appeals,
Fifth Circuit.

April 21, 1989.

M. Carolyn Fuentes, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Gregory D. Anderson, Asst. U.S. Atty., LeRoy Morgan Jahn, and Helen M. Eversberg, U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before KING, WILLIAMS and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

John Doe, a juvenile initially entitled to anonymity under 18 U.S.C. § 5038(e), was charged with robbing the Army and Air Force Branch Exchange (located at Fort Sam Houston, Texas) with a pistol, in violation of 18 U.S.C. § 2111. He was seventeen at the time of the crime, but the government successfully sought his transfer to adult status for purposes of prosecution. Doe now appeals the order of the district court issued under 18 U.S.C. § 5032 authorizing his transfer to prosecution as an adult rather than as a juvenile for the armed robbery. His claims are: (1) the court abused its discretion, basing its transfer order on clearly erroneous findings of fact, (2) Doe was deprived of his Fifth Amendment due process rights, and (3) the government's motion for transfer was filed without proper authority.

*Prior Procedural History*

In March, 1988, the United States Attorney for the Western District of Texas, determined that state juvenile authorities had no jurisdiction over Doe. The robbery was committed after his seventeenth birthday, and if the offense had been a state offense, he would have been treated as an adult. The U.S. Attorney requested authorization from the Chief of the General Litigation and Legal Advice Section, Criminal Division, U.S. Department of Justice, to proceed against Doe as an adult for his alleged involvement in the robbery. The Section

Chief under the authority of the Attorney General, on April 18, 1988, authorized the U.S. Attorney "to move the court to transfer the proceedings against John Doe to adult prosecution." A motion for transfer was filed subsequently in the District Court for the Western District of Texas.

Doe's whereabouts were unknown until he was apprehended in Kansas on July 27, 1988. He was removed from jail in Kansas and brought back to Texas. A federal public defender was appointed for him, and a formal two day hearing on the motion for transfer was held by the district court on August 26 and 29, 1988. The district court granted the government's motion for transfer and issued an order stating its findings of fact and conclusions of law. It is from that order that the defendant now appeals.

*Factual History*

An examination of the appellant's background is relevant to the consideration of the underlying offense. Doe was born on January 24, 1970. His parents were divorced when he was approximately a year old. He and his brothers were shuttled between his alcoholic mother and his father, who remarried. Eventually he and his brothers were left with his mother. The boys essentially raised themselves, doing their own cooking and grocery shopping while receiving no substantial or consistent parental guidance.

While Doe lived in Kansas with his mother he had several scrapes with the juvenile authorities. When he was 13 he was convicted of shoplifting some batteries and gum. Later he was convicted of having stolen a bicycle. He also has a history of drug abuse; he admits to smoking marihuana beginning at age 6 (when it was provided to him by his brothers), using methamphetamine and cocaine beginning at the age of 15, and a use of heroin at least once. He was admitted along with his alcoholic mother to the Valley Hope Drug/Alcohol Rehabilitation Center in Kansas in 1986. After this treatment he continued to smoke marihuana, but apparently stopped using the other drugs.

In September of 1986, Doe moved to San Antonio, where he lived with his brother and was employed in his father's business.

Doe apparently has never had any behavioral problems in school and has no previous history of violent crime. Several adults unrelated to him testified at his trial that he is polite and well-behaved. The government offered no evidence to the contrary. Doe alleges that he has a learning disability and his high school records and testing indicate him to be in the dull/normal intelligence range. He also has serious hearing loss in his left ear.

The series of events leading to this appeal began on August 14, 1987, when Doe stole a car. He was arrested in possession of the stolen vehicle on August 16 and was released after his father posted a $5,000 bond.

■ On September 14, 1987, Doe stole another car (a 1985 Buick) from a gas station. The prosecution introduced testimony that Doe confessed to going then to Fort Sam Houston over the next few days and learning the routine of the military police as a means of preparing to rob the Army and Air Force Branch Exchange (hereafter "the Exchange") located on base. These plans were made in conjunction with a friend, Jimmy Jansky, a part-time employee at the Exchange.[1] On September 21, 1987, Doe borrowed a .22 caliber revolver from a classmate, drove with Jansky in the stolen Buick to the Exchange, donned a ski mask, and proceeded to rob the Exchange. The government's evidence is that he put the pistol at one employee's head and then forced two employees into the rear office, where a night manager was counting the money. He ordered the night manager to fill a sack with money and then fled with approximately $1,700. Jansky drove him away in the stolen Buick.

Doe was stopped with the stolen Buick the next day. After he was arrested he

---

**1.** For purposes of a transfer hearing, the district court may assume the truth of the offense as alleged. *In Re T.W.*, 652 F.Supp. 1440, 1442 (E.D.Wis.1987). Hence we do not use the subjunctive when referring to the crime, as we normally would.

gave the sheriff's deputy and military police sworn statements outlining his involvement in the armed robbery. He then led the authorities to a remote spot where he had hidden the money. They recovered roughly $1,400.

Doe maintains that he was frightened, that if anyone had offered resistance he would have run away, and that he has since felt remorse for the robbery. Doe had completed the 11th grade and was a high school senior at the time of the robbery. He was living in abandoned houses during this time and contends he was desperately trying to stay in high school. Since the robbery Doe's father has severed all ties with him.

On January 19, 1988, Doe entered a guilty plea to state charges of two counts of unauthorized use of a motor vehicle. He received five year concurrent sentences on the two counts. He applied for probation, and on March 24, 1988, his application was granted. He was given eight years probation in an intensive supervision program on the condition that he receive drug and alcohol treatment at the Victory Temple, that he live with and be supervised by Ralph and Thelma Schreiber, and that he complete 800 hours of community service. On April 7, he attended an orientation where the conditions of his probation were explained to him.

On April 8, 1988, Doe was arrested for criminal trespass of a habitation. It is unclear from the record whether this was a burglary attempt or simply another instance of Doe sleeping in an abandoned building. He had been to Victory Temple once, failed to perform any community service and resided with the Schreibers only a short time. The district attorney filed a motion to revoke his probation, but on May 20, 1988, in lieu of revoking his probation the state altered its conditions. Instead of incarcerating him in the Texas Department of Corrections, he was put under custodial supervision in a community based facility known as the Bexar County Adult Probation Restitution Center. On May 20, 1988 he was taken to the Restitution Center to begin his custodial supervision. Some time

that night he escaped by pole vaulting over the barbed wire fence of the center. He then fled to Kansas where he was later apprehended.

I. Did the Court Commit Error in Transferring Doe to Prosecution as an Adult?

The governing statute in this case is 18 U.S.C. § 5032. The applicable parts of the law provide:

A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter ... except that, with respect to a juvenile fifteen years and older alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence ... criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice; ....

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

Doe was over fifteen and his crime was one of violence, hence the statute applies to him. The district court weighed all six factors mandated by the statute and concluded that:

Factors (2) through (5) weigh heavily in favor of transfer to adult jurisdiction. The age portion of Factor (1) weighs in favor of transfer, but the social-background portion is essentially neutral.

Factor (6) weighs slightly against transfer. The Court is particularly influenced by the violent nature of the offense, the planning and sophistication that went into its execution, the extent of the Defendant's prior record, and the lack of success of previous treatment and rehabilitation efforts.

Doe in this appeal challenges both the court's method of analysis and the results. He maintains that: (1) the six factors to be considered in deciding whether to transfer the juvenile must be solely employed to determine the juvenile's prospects of rehabilitation, (2) the court's findings of fact were incorrect and incomplete, and (3) the court abused its discretion by taking no note of important evidence and unduly crediting trivial or flawed evidence. We examine these points in order.

A. *The Code and the Standard of Review*

■ We begin by noting that the "interest of justice" analysis gives the district court broad discretion. As the First Circuit has noted:

> [T]he guiding principle in transfer proceedings is "whether a transfer would be in the interest of justice." 18 U.S.C. § 5032. Such a determination is likewise left to the sound discretion of the district court. *United States v. Hayes*, 590 F.2d 309, 311 (9th Cir.1979). In light of the gravity of the crime involved, weighed against the other five section 5032 factors, we cannot say that the district court struck the balance improperly.

*United States v. Hemmer*, 729 F.2d 10, 18 (1st Cir.), *cert. denied sub. nom. Randazza v. United States*, 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). *See also United States v. Alexander*, 695 F.2d 398, 400 (9th Cir.1982).

We have found only one case, *United States v. C.G.*, 736 F.2d 1474 (11th Cir. 1984) in which an appellate court overturned a district court's order approving transfer of a juvenile to adult status for the purpose of prosecution. In *C.G.* the Eleventh Circuit found that the district court had not complied with the statutory scheme by failing to examine each of the six factors laid out in the statute.

> [W]e conclude that the court failed to make adequate findings of fact. Regarding two of the statutory factors—the extent and nature of the juvenile's past delinquency record, and the nature of the past treatment efforts and the juvenile's response to such efforts—the court made no findings whatsoever. Regarding the other factors, the court's findings are extremely brief and general.... Having concluded that there are insufficient findings in this case, we need not pass on the district court's interest-of-justice determination.

*Id.* at 1479. Here the defendants do not contend that the court did not make sufficient findings of fact but rather that its findings and the conclusions it drew were incorrect.

We have found six cases in which a federal appellate court has reviewed the merits of an 18 U.S.C. § 5032 transfer ruling and has upheld the district court's decision. *United States v. Porter*, 831 F.2d 760 (8th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1037, 98 L.Ed.2d 1001 (1988); *United States v. A.W.J.*, 804 F.2d 492 (8th Cir. 1986); *Hemmer*, 729 F.2d 10 (1st Cir.1984); *United States v. Alexander*, 695 F.2d 398 (9th Cir.1982), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983); *People of Territory of Guam v. Kingsbury*, 649 F.2d 740 (9th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 210 (1981); *United States v. Hayes*, 590 F.2d 309 (9th Cir.1979). In *Porter, Hemmer*, and *Hayes*, as in the present case, the juvenile was transferred to adult status for the crime of armed robbery. The *Hemmer* court specifically decided that the seriousness of the crime of armed robbery outweighed the other five factors sufficiently to justify transfer to prosecution under adult status.

■ Doe argues that the broad purpose of the Juvenile Delinquency section of the United States Criminal Code, 18 U.S.C. §§ 5031–42, is to rehabilitate the youthful offender, if possible. From that premise, Doe contends that all six factors listed in

section 5032 must be directed purely to the determination of rehabilitative potential. He claims that it is "incumbent on the court to deny a motion to transfer where, all things considered, the juvenile has a realistic chance of rehabilitative potential in the available treatment facilities during the period of his minority." *United States v. E.K.*, 471 F.Supp. 924, 932 (D.C.Ore.1979). *See also Application of Gault*, 387 U.S. 1, 14–16, 87 S.Ct. 1428, 1437, 18 L.Ed.2d 527 (1967); *United States v. Hill*, 538 F.2d 1072, 1074 (4th Cir.1976); *United States v. King*, 482 F.2d 454, 456 (6th Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973).

Doe implies that *E.K.* endorses rehabilitation at almost any cost. It does not. The above quotation must be placed in context:

> [T]he balance must be struck somewhere and somehow between providing a rehabiliative environment for young offenders as well as protecting society from violent and dangerous individuals and providing sanctions for anti-social acts. And that balance must be struck by the district court in the context of a transfer hearing....
>
> It is incumbent upon the court to deny a motion to transfer where, all things considered, the juvenile has a realistic chance of rehabilitative potential in available treatment facilities in the period of his minority.... However, where no realistic chance for rehabilitation exists, we have the clearest case where the balance does indeed tip in favor of bringing the philosophy of the criminal justice system into play.

*E.K.*, 471 F.Supp. at 932 (D.Or.1979). Clearly, while rehabilitation is a priority, the courts are not required to apply the juvenile justice system to a juvenile's diagnosed intellectual or behavioral problems when it would likely prove to be nothing more than a futile gesture. *See In Re T.W.*, 652 F.Supp. 1440, 1445 (E.D.Wis. 1987). The finding of rehabilitative potential is a test which is within the sound discretion of the trial court; that court may want more than a "glimmer of hope" that rehabilitation will be efficacious.

## B. *Findings of Fact and Conclusions*

Doe argues that the district court's findings of fact and the conclusions drawn from them are clearly erroneous and thus the decision to transfer him to adult status should be overturned. We first consider challenges to the actual findings of fact.

Of the six listed factors, the court found only one, the availability of treatment facilities, to weigh against transfer and only slightly. The court's findings on available treatment were that there were 169 places vacant in the 31 facilities in the total federal juvenile delinquency system, three facilities near or in the Western District of Texas had programs of the type that might be able to treat the defendant's behavioral problems, but that these facilities did not have sufficient physical security to prevent the defendant's escape.

The other five factors were found to be in favor of transfer. Those factors are, respectively: age and social background, the nature of the alleged offense, extent and nature of the prior delinquency record, intellectual development and psychological maturity, and the nature of past treatment and the defendant's response to it.

As to the first factor, the court found that the defendant had had a troubled family background, no substantial parental influence or guidance, and a mother who was an alcoholic. The defendant was only four months short of adulthood at the time of his offense. While the judge found the background neutral, the age factor weighed in favor of the transfer.

The court concluded that next four factors weighed "heavily in favor of transfer to adult jurisdiction," stating that it was "particularly influenced by the violent nature of the offense, the planning and sophistication that went into its execution, the extent of the defendant's prior record, and the lack of success of previous treatment and rehabilitation efforts."

■ Regarding the nature of the crime, the second factor, Doe argues that there was no reliable evidence for the conclusion that the crime was well planned and sophis-

ticated. The principal evidence concerning the nature of the crime was the testimony of an FBI agent, Snodgrass, who investigated the case and a probation officer to whom the defendant confessed. It is true that the defendant's confession itself was never introduced into evidence. Strict rules of evidence, however, do not apply in a juvenile proceeding; hearsay testimony concerning a confession is admissible. Doe also complains that some of the FBI Agent's statements regarding the crime had no factual basis; for example, the allegation that he pointed the gun at the head of one of the Exchange's employees and that he stole the car in preparation for the robbery. These claims are contrary to the record. There was testimony supporting these factual conclusions, and the district judge properly made credibility determinations.

■ Doe also challenges some of the evidence presented concerning his intellectual and psychological maturity (fourth factor). He claims that the court accepted a test of questionable validity, the Minnesota Multi–Phasic Personality Inventory (hereafter the "MMPI"), and therefore found that he exhibited sociopathic traits and a high risk of violent and aggressive behavior. The defendant argues that the court accepted the statements of Ms. DaVolt, who administered the MMPI, while simultaneously rejecting the testimony of Dr. Sparks, who heads the department in which Ms. DaVolt works, concerning the MMPI. Doe further argues that the court ignored his lack of prior violent behavior, the observation by neutral adults that he is not a violent person, and Dr. Sparks' testimony that any adult correctional facility would be likely to make him into a hardened criminal because of his impressionable nature.

There is no indication in the order that the district judge accepted the MMPI as valid. But it would have been within his discretion to do so. He had the responsibility to evaluate the conflicting testimony. The appellant essentially is complaining about the sufficiency of the evidence. While the conclusion that Doe exhibits "a high risk for violence" is made in the ab-

sence of school disciplinary problems or previous violent crimes, the MMPI and particularly the armed robbery itself clearly provided sufficient evidence for the court's conclusion.

■ Doe maintains that his prior rehabilitation record (fifth factor) has been misinterpreted. The district court concluded that he "failed to respond satisfactorily" to the several rehabilitation opportunities afforded him. The appellant maintains that his drug rehabilitation efforts have been at least partially successful, because he has ceased to be a multiple substance abuser. He also argues that he should not be judged by his performance regarding the Victory Outreach Temple, the Restitution Center, and the community service requirements because they were grossly unsatisfactory programs for him. To make this claim as to all three programs stretches credibility. No delinquent is entitled to a tailor-made program which accords with his personal wishes.

It is true that the Victory Outreach Temple was a religiously oriented program largely for heroin addicts, and his community service work was to be done at a place 25 miles away from his residence, even though he had no transportation. The community service obligation, however, did not have to be fulfilled immediately. Nevertheless, even if the practices of the Victory Outreach Temple were inappropriate and the practical difficulties of the community service work significant, the appellant quickly and willfully violated the conditions of probation which were imposed upon him. Even more significant was his immediate escape from the Restitution Center. The court certainly had an adequate basis for its conclusion.

Turning from the appellant's challenges regarding individual fact findings, Doe urges that insufficient weight was given to his troubled family background and the availability of federal juvenile rehabilitation programs.

■ This challenge is unpersuasive. 18 U.S.C. § 5032 says no more than that all six factors are to be considered. A court is certainly not required to weigh all statu-

tory factors equally. For instance, the seriousness of the crime obviously can be given more weight than other factors in determining whether there is a "realistic chance" of rehabilitation, and hence whether a transfer is appropriate. *See United States v. Means*, 575 F.Supp. 1068, 1072 (D.S.D.1983). In *United States v. Alexander*, 695 F.2d 398 (9th Cir.1982) the district judge had found that the seriousness of the crime (premeditated murder and multiple wounding by gunshot of four individuals) outweighed the potential for rehabilitation. The Ninth Circuit upheld this decision, stating:

> It is evident that the judge was unpersuaded that availability of treatment would necessarily lead to rehabilitation; the grievous nature of the crime was such that the judge wanted more than a glimmer of hope of rehabilitation (footnote omitted). Judge Nielsen's emphasis on the lack of a likelihood for rehabilitation in light of the nature of the crime was not an abuse of discretion.

*Alexander*, 695 F.2d at 401.

The district court in the current case employed the same permissible calculus when it found the nature of the crime and the defendant's prior record particularly compelling factors favoring transfer. The district court was the finder of fact in this hearing and made its findings largely on the basis of credibility choices. Such credibility choices cannot be overturned unless clearly erroneous. *United States v. Alvarado Garcia*, 781 F.2d 422, 425 (5th Cir. 1986).

 The decision whether to transfer a juvenile to trial as an adult under 18 U.S.C. § 5032 is within the sound discretion of the trial court, provided the court employs and makes findings as to the six criteria outlined in the Code. The district court did so, there was adequate evidence to support its findings regarding each factor, and its ultimate weighing of the factors does not fly in the face of the evidence. The district court's factual findings and decision must be upheld.

## II. Due Process Claim

 The appellant argues that the court's reliance upon the testimony of FBI Agent Snodgrass regarding the robbery deprived the appellant of due process of law. The Supreme Court held in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) that a procedure which could result in issuance of a waiver order allowing the prosecution of a juvenile as an adult must "measure up to the essentials of due process and fair treatment." *Id.* at 562, 86 S.Ct. at 1057. The procedures used at a hearing on the transfer of a juvenile delinquent, however, do not need to conform to all the requirements of a criminal trial. *Id.*

 The appellant contends that Snodgrass' testimony consisted in large part of second and thirdhand hearsay. The Federal Rules of Evidence do not govern an 18 U.S.C. § 5032 transferal hearing. *United States v. E.K.*, 471 F.Supp. 924, 930 (D.Or.1979).[2] It is true that *E.K.* is distinguishable from the present case because there the FBI agent's testimony was based in large part on firsthand interviews and knowledge rather than second and thirdhand hearsay. Nevertheless, if hearsay is admissible, the degree of its derivation only affects its persuasive power, not its use at the hearing.

The appellant was afforded a two-day hearing in which an extensive factual background was developed. He was zealously represented during the hearing. All the available witnesses were heard. There was a meaningful opportunity for cross-examination, and the defendant was able to challenge the government's evidence. Although the government did have Agent Snodgrass testify to the content of Doe's confession and witnesses' statements and did not introduce that evidence itself, Snodgrass was not used as a funnel to introduce otherwise inadmissible evidence. The de-

---

**2.** This situation is analogous to that covered by Fed.Rule of Evidence 1101(d)(3), which provides that the Rules of Evidence (except with respect to privileges) do not apply to preliminary examinations in criminal cases. *See E.K.* at 930.

fendant's due process rights were not violated.

III. **The Procedural Validity of the Motion to Transfer**

 Prior to initiating transfer proceedings, Ms. Eversberg, the United States Attorney for the Western District of Texas, wrote to Mr. Lawrence Lippe, Chief of the General Litigation and Legal Advice Section, Criminal Division of the Department of Justice, requesting authorization to proceed with the transfer hearing. The transfer was approved in the name of the Attorney General. An Assistant United States Attorney, Gregory Anderson, filed the motion for transfer.

Doe challenges Lippe's authority to approve the motion for transfer and Anderson's authority to sign and file it. We address these procedural challenges in turn. The pertinent part of 18 U.S.C. § 5032 provides:

A juvenile alleged to have committed an act of juvenile delinquency ... shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a state does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the state does not have available programs or services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

If an alleged juvenile is not surrendered to the authorities of a State ... pursuant to this section, any proceedings against him shall be held in an appropriate district court of the United States....

Criminal prosecution on the basis of the alleged act may then be begun if the motion to transfer is approved by a United States district court.

Because the delegation of the power to authorize transfer is not expressly addressed in the critical statutory provision, 28 U.S.C. § 510 becomes applicable. It allows the Attorney General to authorize any officer or employee of the Department of Justice to perform the Attorney General's functions. *See United States v. Cuomo*, 525 F.2d 1285, 1287–88 (5th Cir.1976); *In re Application of President's Commission on Organized Crime*, 763 F.2d 1191, 1200 (11th Cir.1985). The Code of Federal Regulations provides for the delegation of the power to authorize transfer requests:

The Assistant Attorney General in charge of the Criminal Division and his Deputy Assistant Attorneys General are each authorized to exercise the power and authority vested in the Attorney General by sections 5032 and 5036 of Title 18, United States Code, relating to criminal proceedings against juveniles. The Assistant Attorney General in charge of the Criminal Division is authorized to redelegate any function delegated to him under this section to United States Attorneys and *to the Chief of the Section within the Criminal Division which supervises the implementation of the Juvenile Justice and Delinquency Prevention Act* (18 U.S.C. § 5031 *et seq.*).

28 C.F.R. § 0.57 (July 1, 1988) (emphasis added).

Lippe's letter to Eversberg on April 18, 1988, stated:

Pursuant to the authority delegated to me by the Attorney General in 28 C.F.R. § 0.57, you are hereby authorized and directed to move the court to transfer the proceedings against John Doe to adult prosecution thereby seeking a court determination whether such transfer would be in the interest of justice as required by 18 U.S.C. § 5032....

Doe questions whether Lippe is the Chief of the appropriate Section within the Criminal Division which supervises the implementation of the Juvenile Justice and Delinquency Prevention Act.

Doe offers no evidence that Lippe's section is not the appropriate one; he merely asserts that the government never proved Lippe had the authority to approve the transfer motion. Mr. Lippe stated in his letter that he had such authority. In the absence of any evidence to the contrary, Doe's claim must fail.[3]

■ The second procedural complaint is that an Assistant United States Attorney, Anderson, signed and filed the motion for transfer on behalf of Eversberg, the United States Attorney. Doe argues that the Assistant United States Attorney had neither statutory nor regulatory authority to file the motion, relying on a case in which this Court has stated: "There is no mention of delegation to Assistant United States Attorneys [in 18 U.S.C. § 5032]. Therefore, the certification filed ... by the Assistant United States Attorney, may not have been a certificate within the meaning of the statute [footnote omitted]. We need not decide this issue here, however." *United States v. Cuomo*, 525 F.2d 1285, 1288 (5th Cir.1976).

As is made clear by the above statement, *Cuomo* did not decide the issue of whether Assistant United States Attorneys were generally delegated the power to certify jurisdiction over an 18 U.S.C. § 5032 transfer proceeding to a federal district court. *Cuomo* was decided on other grounds and hence is not determinative.

In a somewhat similar case a Deputy Assistant Attorney General redelegated his authority to certify a juvenile transfer, although he was not authorized to do so by 28 C.F.R. § 0.57. The Eighth Circuit held that "here the motion was made by one not technically appropriately delegated. Nevertheless, since it appears that the *decision* [italics in original] to file the motion for transfer was made by an authorized person, technical failure in filing is not fatal to jurisdiction." *United States v. Parker*, 622 F.2d 298, 307 (8th Cir.), *cert. denied sub. nom. Ward v. United States*, 449 U.S. 851, 101 S.Ct. 143, 66 L.Ed.2d 63

(1980). The logic of *Parker* applies to the instant case. The initial request to Mr. Lippe of the Department of Justice for authorization to proceed on the motion to transfer was submitted and signed by Ms. Eversberg herself. Hence, the documentary evidence shows that Eversberg made the final decision to seek prosecution of Doe as an adult. To make the authority even clearer, Eversberg's initial request and Lippe's authorization were attached to the motion for transfer and were incorporated into it by reference. The Assistant United States Attorney merely performed a ministerial act of signing and filing on behalf of Ms. Eversberg. We find no procedural defect in the motion to transfer.

### Conclusion

The court did not abuse its discretion in its substantive finding transferring Doe to adult status for prosecution. Further, the juvenile's due process rights were not violated in the transfer hearing. The procedures followed by the government in petitioning for the transfer were legally effective. We affirm the district court's decision to transfer Doe to prosecution as an adult.

AFFIRMED.

---

**3.** In any case, Eversberg had the general authority to certify the case herself. The appropriate U.S. Attorneys had that general authority delegated to them on October 16, 1974, and do not

need authorization on a case by case basis. *United States v. Bent*, 702 F.2d 210, 213 n. 1 (11th Cir.1983); *United States v. Daye*, 696 F.2d 1305, 1307 (11th Cir.1983).