**UNITED STATES of America**

v.

**H.S., Jr.**

**Civ. A. No. 89–0310M–01.**

United States District Court, District of Columbia.

July 20, 1989.

---

**912**

Betty Ann Soiefer, with whom Robert G. Andary and Barry M. Tapp were on the brief, Asst. U.S. Attys., Washington, D.C., for the U.S.

Thomas B. Mason, with whom Lisa Greenman was on the brief, Public Defender Service, Washington, D.C., for H.S., Jr.

## INTRODUCTION

CHARLES R. RICHEY, District Judge.

H.S., Jr. is seventeen years old. The Government has filed a three-count Information against him charging three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1).[1] In addition, the United States Attorney has certified that the offenses charged violate Section 401 of the Controlled Substances Act, and that there is a substantial federal interest in the case against H.S., Jr. so as to warrant the exercise of federal jurisdiction. Based on the Information and the United States Attorney's certification, the Government has filed a motion pursuant to 18 U.S.C. § 5032 to transfer H.S., Jr. to adult status for the purpose of criminal prosecution. The Court held a hearing on the Government's motion to transfer on June 16, 1989, and resumed that hearing in June 23, 1989.[2] At the conclusion of the hearing, the Court took the Government's motion to transfer under advisement.

The decision of whether to transfer a juvenile to adult status has serious consequences. Despite the grave consequences that transfer may hold for H.S., Jr.'s future, the Court must conclude, based on a review of the entire record and the factors set forth in 18 U.S.C. § 5032, that the requested transfer is in the interest of justice.

## THE EVIDENTIARY STANDARDS IN PLACE AT A TRANSFER HEARING

At the transfer hearing, the Government introduced a confession that H.S., Jr. made to police officers during an interview in connection with a homicide investigation.[3] Counsel for H.S., Jr. objected on Fifth Amendment grounds. Whether a Fifth Amendment objection can properly be made at a transfer hearing is a question that the Supreme Court has explicitly left unanswered. Although the Supreme Court has held that a transfer hearing must com-

---

1. This Information is an Amended Information, which was filed with leave of Court on June 15, 1989. The first Information filed against H.S., Jr. contained one count, and charged H.S., Jr. with conspiracy to distribute and to possess with intent to distribute cocaine and distribution of cocaine. After the Court informed the Government that conspiracy is not amongst the offenses that provide a basis for a motion to transfer and that the statutory cite for the offense of distribution was incorrect, the Govern-

ment filed a motion for leave to file an amended Information.

2. The Court invited counsel for H.S., Jr. and counsel for the Government to submit in writing any closing arguments that they wished to make to the Court.

3. H.S., Jr. was not a suspect in that investigation.

port with "the essentials of due process and fair treatment," it "has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer. a juvenile for trial in adult court." *Breed v. Jones,* 421 U.S., 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346 (1975). Because of the dearth of guidance on the availability of Fifth Amendment protections at a transfer hearing and the existence of evidence in the affidavit in support of the warrant for H.S., Jr.'s arrest which is the substantial equivalent of H.S., Jr's confession, the Court will strike H.S., Jr.'s confession from the record.[4]

■ While the availability of Fifth Amendment protections at a transfer hearing is a question that remains to be resolved, the law is clear that the strict evidentiary rules in place at a criminal trial are not binding in a transfer hearing. *See United States v. Doe,* 871 F.2d 1248 (5th Cir.1989). As such, findings in support of a decision to transfer can be based on hearsay evidence, and evidence that will not otherwise be admissible at trial.

## THE STANDARD GOVERNING TRANSFER TO ADULT STATUS

■ When a juvenile is alleged to have committed an act of juvenile delinquency, the Federal Juvenile Delinquency Act ("FJDA") allows the Attorney General[5] to request that proceedings against a juvenile be instituted in federal district court. As a prerequisite to this request, the Attorney General must certify that:

> (1) the juvenile or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), or section 1002(a), 1003, 1005, 1009, or 1010(b)(1), (2), or (3) of the Controlled Substances Import and Export Act … or section 922(p) of this title, and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032. The certification has the effect of allowing the Attorney General to proceed against a juvenile in federal district court; however, the certification, standing alone, does not authorize the Attorney General to proceed against a juvenile as an adult.

In federal court, the general rule provides that juveniles are not to be criminally prosecuted as adults, but instead are to be proceeded against in juvenile delinquency

---

**4.** The Court emphasizes that the striking of H.S., Jr.'s confession from the record is by no means a concession that Fifth Amendment protections are available at a transfer hearing. At least two state courts have held that the privilege against self-incrimination cannot be claimed at a transfer hearing. *See In re Ralph M.,* 211 Conn. 289, 559 A.2d 179 (1989) (holding that constitutional questions concerning the admissibility of a juvenile's statements "while relevant at a later adjudicatory proceeding, are not appropriate for resolution at a transfer hearing"); *In re D.E.D.,* 101 Wis.2d 193, 304 N.W.2d 133, 138 (1981) (holding that motion to suppress confession "on the ground of inadmissibility at trial are premature when brought before a juvenile jurisdiction waiver hearing"). Moreover, there is precedent supporting the use of the "liberal standard of admissibility" applicable to preliminary hearings at transfer hearings. *United States v. E.K.,* 471 F.Supp. 924, 930 (D.Or.1979); *see also In re*

*T.W.,* 652 F.Supp. 1440, 1442 (E.D.Wis.1987) (comparing transfer hearing to a preliminary hearing). The general rule is that objections to the admissibility of evidence on constitutional grounds are not properly made at preliminary hearings because such hearings are not adjudicatory in nature. 2 W. LaFave & J. Israel, *Criminal Procedure* § 14.4(a) (1984). Finally, the portion of the federal statutory provision governing the transfer of juveniles to adult status which provides that "[s]tatements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions" lends support to the admission of confessions at a transfer hearing. 18 U.S.C. § 5032.

**5.** The Attorney General has authorized the United States Attorney for the District of Columbia to exercise his powers under the statute here involved.

proceedings. These delinquency proceedings are initiated by the Attorney General's filing of an Information against the juvenile. The FJDA, however, carves out two exceptions to this general rule. One exception makes the transfer of a juvenile to adult status mandatory if the juvenile is alleged to have committed an act of juvenile delinquency after his or her sixteenth birthday, and if certain other conditions are satisfied. The other exception allows a Court to transfer a juvenile alleged to have committed an act of juvenile delinquency after his or her fifteenth birthday to adult status if the Court concludes, based on its findings with respect to six factors, that such transfer is in the interest of justice.

There are several factual scenarios that trigger the mandatory transfer provision. One such factual scenario is as follows: the juvenile is alleged to have violated section 401 of the Controlled Substances Act after his sixteenth birthday, and a previous adjudication has determined that the juvenile previously committed the same offense, even if the adjudication was under a state felony statute. H.S., Jr.'s case squarely fits this factual scenario.[6] Nevertheless, in the precise context of this case, the *ex post facto* clause of the Constitution precludes application of the mandatory transfer provision to H.S., Jr, because the relevant portion of the provision did not become effective until November 18, 1988, and the last act of distribution charged in the Information occurred on November 14, 1989.

At first blush, the mandatory transfer provision appears to be nothing more than procedural; therefore, its application to H.S., Jr. should not create an *ex post facto*

violation. Such a conclusion, however, ignores the practical effect of the provision's application. Prior to November 18, 1988, the law provided that the transfer of H.S., Jr. to adult status would be discretionary, and contingent upon where the "interest of justice" lies. On November 18, 1988, however, the law was changed so as to make such transfer mandatory. Thus, retroactive application of the November 1988 amendment to the mandatory transfer provision would have the effect of placing H.S., Jr. at a substantial disadvantage. Assuming H.S., Jr. committed the alleged acts, application of the mandatory transfer provision, as amended in 1988, would mean the difference between a possibility and an absolute certainty that H.S., Jr. would face trial as an adult, and, if convicted, serve a mandatory minimum prison term of at least ten years.[7]

Unlike the mandatory transfer provision, the interest of justice standard is a discretionary one. *United States v. Doe,* 871 F.2d at 1252 (citing *United States v. Hemmer,* 729 F.2d 10, 18 (1st Cir.), *cert. denied sub. nom. Randazza v. United States,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984); *United States v. Alexander,* 695 F.2d 398, 400 (9th Cir.1982), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983)). In determining whether a given transfer is "in the interest of justice," *see* 18 U.S.C. § 5032, the Court is to consider the juvenile's age and social background, the nature of the alleged offense, the nature and extent of the juvenile's prior delinquency record, the juvenile's present intellectual development and psychological maturity, the nature of past treatment efforts and the juvenile's re-

6. H.S., Jr. was 16 years of age when he allegedly committed the first two acts of distribution charged in the Information, and 17 years of age when he allegedly committed the third act of distribution charged. On December 16, 1986, H.S., Jr. was adjudged delinquent for possession with intent to distribute cocaine; possession with intent to distribute is a felony under the District of Columbia Code. In addition, this offense would have constituted a violation of Section 401 of the Controlled Substances Act had federal jurisdiction existed.

7. In addition, application of the mandatory

transfer provision, as amended in 1988, would mean that there is not just a possibility, but instead an absolute certainty that H.S., Jr. will lose various protections afforded persons proceeded against as juveniles. A person proceeded against as a juvenile is "entitled to the sealing of court records, limitation of inquiries into records, protection from photographing and withholding of his name and picture from the news media." *United States v. Smith,* 851 F.2d 706, 708 (4th Cir.1988) (citing 18 U.S.C. § 5038; *United States v. C.G.,* 736 F.2d 1474 (11th Cir. 1984)).

sponse to such efforts, and the availability of programs to treat the juvenile's behavioral problems. *Id.* According to one court:

> [In balancing these six factors], the balance must be struck somewhere between providing a rehabilitative environment for young offenders as well as protecting society from violent and dangerous individuals and providing sanctions for antisocial acts. And that balance must be struck by the district court in the context of a transfer hearing....
>
> It is incumbent upon the court to deny a motion to transfer where, all things considered, the juvenile has a *realistic* chance of rehabilitative potential in available treatment facilities in the period of his [or her] minority.... However, where no realistic chance for rehabilitation exists, we have the clearest case where the balance does indeed tip in favor of bringing the philosophy of the criminal justice system into play.

*United States v. Doe,* 871 F.2d at 1253 (quoting *E.K.,* 471 F.Supp. at 932) (emphasis added).

### FINDINGS OF FACT

1. **Age and Social Background.** H.S., Jr.'s date of birth is October 16, 1971; he is currently three months short of his eighteenth birthday.

H.S., Jr.'s parents separated when he was about 14 years of age. Since his parents' separation, H.S., Jr. has had very little contact with his father, who is currently residing in Cleveland, Ohio. H.S., Jr. lived with his mother up until his arrest. During the two and one-half years preceding his arrest, H.S., Jr., his mother, and his siblings resided at 1307 Saratoga Avenue, N.W. Prior to moving to Saratoga Avenue, Mrs. S. and her children resided with a friend on a temporary basis, and spent one month in the Capitol City Inn, a homeless shelter. Mrs. S. is a service worker with the Washington Metropolitan Transit Authority; she earns $3.85 an hour.[8] H.S., Jr. has a particularly close relationship with his mother.

Dr. Alan G. Vaughn, a clinical psychologist on the staff of the Howard University Hospital, conducted an interview of H.S., Jr. He initially concluded that H.S., Jr. grew up in modest, but relatively stable socioeconomic circumstances. Dr. Vaughn, however, changed his conclusion as to the stability of H.S., Jr.'s home environment after interviewing Mrs. S. Based on his conversations with Mrs. S., Dr. Vaughn concluded that H.S., Jr's home environment was stable only until H.S., Jr. was about nine years of age.

2. **The nature of the alleged offense.**[9] The charges against H.S., Jr. are extremely serious. Although the charges in the Information are confined to three discrete acts of distribution of cocaine, the nature of these acts cannot be evaluated in a vacuum. According to the affidavit in support of the warrant for H.S., Jr.'s arrest, these acts of distribution were part of a sophisticated drug conspiracy, in which H.S., Jr. is alleged to have played a significant role. In addition to these three discrete acts of distribution, the affidavit alleges that H.S., Jr. collected the money street sellers received from cocaine sales, carried substantial quantities of cocaine to street sellers for distribution, and helped Rayful Edmond, III, the conspiracy's alleged ringleader, sell fairly substantial amounts of cocaine for significant sums of money. In addition, the affidavit alleges that H.S., Jr. acted as an "enforcer" in the Edmond operation; he is alleged to have carried a weapon to protect Edmond's street sellers from rival drug distributors who "ventured onto [Edmond's] turf."[10]

3. **The Extent and Nature of the Juvenile's Prior Delinquency Record.** H.S.,

---

8. Although not explored at the transfer hearing, the redacted notes of Dr. Alan G. Vaughn, which were admitted into evidence, indicate that H.S., Jr.'s father helps support the children.

9. For the purpose of the transfer proceeding, the Court is permitted to presume that H.S., Jr. actually committed the offenses charged in the Information. *United States v. Doe,* 871 F.2d at 1250 n. 1 (citing *In re T.W.,* 652 F.Supp. 1440, 1442 (E.D.Wis.1987)).

10. *Affidavit in Support of Arrest Warrants* at ¶ 5.

Jr. has one prior conviction for possession with intent to distribute cocaine, and charges are currently pending in the District of Columbia Superior Court against him for carrying a pistol without a license. H.S., Jr.'s prior conviction and the charges pending against him in this Court and the Superior Court, however, do not paint a complete picture of H.S., Jr.'s prior delinquency record. Since July 29, 1985, H.S., Jr. has been arrested on eleven separate occasions, including his arrest in this case. These arrests have been for, among other alleged offenses, possession with intent to distribute cocaine, distribution of cocaine, assault with intent to kill, carrying a pistol without a license, and unauthorized use of a vehicle. H.S., Jr. was found not guilty in only one out of the nine cases; the eight others dismissed for reasons unrelated to H.S., Jr.'s guilt or innocence.[11]

4. **The Juvenile's Present Intellectual Development and Psychological Maturity.** Tests suggest that H.S., Jr.'s I.Q. is approximately 89; this places him in the low average range of intellectual functioning. Until H.S., Jr. was in the fourth grade, he was an A/B student; thereafter, the quality of his performance in school progressively declined. H.S., Jr. left school in the tenth grade, after an abysmal performance at that level. He failed two subjects in the tenth grade, and was a consistent truancy problem. Currently, H.S., Jr. reads at a fifth grade level, and can do math at a sixth grade level.

H.S., Jr.'s psychological maturity is typical of most adolescents of his age. As with most adolescents, H.S., Jr.'s behavior sometimes resembles the behavior of an adult, and at other times that of a child. H.S., Jr. is able to distinguish right from wrong, yet he does not want to take responsibility for his conviction in 1986 because he feels he was victimized by the police. H.S., Jr. suffers from no severe psychiatric disorders, but he does suffer from serious depression caused by his family situation. H.S., Jr. also has some difficulty verbalizing his feelings, and is prone to acting his feelings out physically.

5. **The Nature of Past Treatment Efforts and the Juvenile's Response to Such Efforts.** No intensive efforts have been made to rehabilitate H.S., Jr. He did, however, serve a nine-month term of probation, which is a form of rehabilitation. Although there was a hiatus in H.S., Jr.'s arrests during the period of his probation, H.S., Jr. was arrested several times after the completion of his probation.

6. **Availability of Programs to Treat the Juvenile's Behavioral Problems.** H.S., Jr's lawyer presented the Court with three programs which take juveniles who are adjudged delinquent in juvenile delinquency proceedings, and which could cater to H.S., Jr.'s various needs.[12] These programs were the Nexus Juvenile Program in Minnetonka, Minnesota, the High Plains Youth Center in Brusk, Colorado, and the Glen Mills School in Concordville, Pennsylvania. Each of these programs is state-run; the Federal Bureau of Prisons does not operate facilities for juveniles, but instead contracts with state facilities when placements are needed for juveniles adjudged delinquent in federal court.[13] The Court received no guarantees that any of these programs would accept H.S., Jr., or that these programs would keep H.S., Jr. until he reaches the age of 21. The Nexus program generally keeps juveniles for fifteen to seventeen months, and the Glen Mills Program only keeps juveniles for a maximum period of two years. The average placement at the program run by Rebound is one year.[14]

---

**11.** Reasons for dismissal include absence of a Drug Enforcement Agency certificate of compliance, officers involved in the case leaving the police force, want of prosecution, and a grant of immunity from suit in return for testimony.

**12.** Dr. Vaughn testified that H.S., Jr. would benefit from an environment that would allow him to continue his education, and obtain a G.E.D. In addition, Dr. Vaughn testified that H.S., Jr.

would profit from drug education, psychological counselling, and vocational planning.

**13.** *Declaration of David R. Essig, Regional Counsel to the Federal Bureau of Prisons* at ¶ 6.

**14.** Dr. Vaughn testified that the program run by Rebound would probably be the best program for H.S., Jr. This program began in June, 1988,

## CONCLUSION

Upon careful consideration of each of the six factors enumerated in the FJDA, the Court concludes that it is not realistic to expect that H.S., Jr. will be rehabilitated by his twenty-first birthday. Because of H.S., Jr.'s close proximity to his eighteenth birthday, the time left for rehabilitating H.S., Jr. is not of a long duration. Moreover, H.S., Jr., who is on the verge of adulthood, has the maturity of an average person of his age. H.S., Jr.'s maturity is not an asset in this instance; the more mature a juvenile becomes, the harder it becomes to reform the juvenile's values and behavior. In the case of H.S., Jr., the Court seriously doubts whether it will be possible to change H.S., Jr.'s values and behavior in a span of just three years. To date, H.S., Jr. has demonstrated that he has no desire to reform his values or behavior. H.S., Jr.'s numerous arrests and confrontations with law enforcement officers have not deterred him from handling drugs or weapons. There is no question that H.S., Jr. knows right from wrong, and can conform his conduct to the requirements of the law if he so wishes; he abstained from any criminal conduct during the nine-month period of his probation. H.S., Jr., however, resumed such conduct just one month after he completed his term of probation. The Court is not satisfied that H.S., Jr. is more susceptible to reforming his conduct and taking responsibility for his actions today than he was after his prior conviction. Accordingly, the Court will grant the Government's motion to transfer H.S., Jr. to adult status.

Finally, at the conclusion of the transfer hearing, H.S., Jr., through his lawyer, requested the Court to stay its transfer Order should the Court grant the Government's motion to transfer so as to allow him to file an appeal. The Court will stay the effect of its Order because the Court's decision will be effectively unreviewable on appeal from a final judgment. In addition, the Court's decision conclusively decides that H.S., Jr. is to be tried as an adult, and the decision that H.S., Jr. should be tried as an adult is wholly separate from the merits of the charges filed against H.S., Jr. in this case. However, it is hoped that any appeal will be processed with all deliberate speed as trial of this case is set for August 14, 1989.

The Court will issue an Order of even date herewith memorializing these findings.

## ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 20 day of July, 1989,

ORDERED that the Government's motion to transfer H.S., Jr. to adult status for the purpose of criminal prosecution shall be, and hereby is, granted; and it is

FURTHER ORDERED that H.S., Jr.'s motion to stay the Court's Transfer Order so as to allow him to appeal shall be, and hereby is, granted.

---

just a little over a year ago. As such, the program has no real track record.